[L.A. No. 32065. July 14, 1986.]

CLINTON PRESTON, a Minor, etc., Plaintiff and Appellant, v.
ALLAN GOLDMAN et al., Defendants and Respondents.

**COUNSEL**

Michael T. Pines, Michael Goldstein, C. Daniel Carroll and Panther, Pines, McCann & Goldstein for Plaintiff and Appellant.

Demler & Armstrong, Robert W. Armstrong, Emmet Thornton, Simon, Buckner, Haile & Migdal, Scott Simon, Stuart L. Brody, Lascher & Lascher, Edward L. Lascher, Wendy Cole Lascher, Finn, Alsop, Silva & Clasen and Tracy L. Gildemeister for Defendants and Respondents.

**OPINION**

**LUCAS, J.**—Should former owners, allegedly negligent in constructing an improvement on their property, be subject to liability for injuries sustained on that property long after they have relinquished all ownership and control? The Restatement Second of Torts proposes that liability is terminated upon termination of ownership and control except under specified exceptions, and we agree.

FACTS

Defendants Jon and Marion Kubichan bought the subject property in 1968. Around January 1972, over the course of a weekend, they designed and built a pond with a fountain in their backyard for a total cost of approximately $130. The pond was built by excavating the ground to a disputed depth and putting a wall approximately 12 inches above ground around the pond.

In October 1973, Alan Goldman bought the property from the Kubichans. Goldman made no alterations to the pond and maintained water in it. In November 1974, Goldman entered into a lease-option to buy agreement with the Reids who took possession. The Reids, who had two small children, put a new brick facing around the pool's exterior, bricked the patio sur-

rounding it, replaced the flagstone coping with brick, and put a layer of brick around the top of the pool walls. The Reids had emptied the pond and were aware of its depth and configurations.

On May 7, 1976, plaintiff Clinton Preston and his siblings were brought to the property by their parents, Cynthia and Stephen Preston, to visit their aunt and uncle, the Reids. Plaintiff was then 22 months of age. The Prestons had been at the house before and were aware of the pond. At some point Mr. Reid and Mr. Preston went out to the garage, accompanied by the children. The men later returned to the house without them. After some time, the parents looked for the children and found Clinton immersed in the pond. As a result of the accident, plaintiff suffered severe permanent brain damage and quadriplegia.

On April 28, 1978, a complaint was filed on behalf of plaintiff by his father, Stephen Preston, as guardian ad litem, naming as defendants Goldman, the Reids, and various Does. On September 26, 1980, plaintiff filed a first amended complaint which named the Kubichans, who had sold the property seven years before, as additional defendants. The Reids cross-complained for indemnity against Goldman and Mr. and Mrs. Preston, alleging negligent supervision. Goldman cross-complained against the Reids and Prestons, and the Kubichans cross-complained against the remaining defendants and cross-defendants.

On Goldman's motion and over plaintiff's objection, the court ordered the issues of liability and damages tried separately. On the date set for trial, the Kubichans, Reids and Goldman successfully moved to dismiss their respective cross-complaints against Mr. and Mrs. Preston. Plaintiff's subsequent motion to file an amended complaint naming his parents as defendants was denied. Before trial, the Reids settled with plaintiff for $25,000, but the parties proceeded as if the Reids were still defendants with notice of the settlement being given to the jury.

The matter was tried before a jury. After all parties rested, the Kubichans moved for nonsuit (Code Civ. Proc., § 581c.) They argued that because of their lack of interest in the subject property at the time of the accident, they owed plaintiff no duty. After argument the court granted the motion but no judgment was entered. The parties then stipulated with court approval that the question of the Kubichans' liability should go to the jury which would not be informed of the court's ruling on the motion. The jury was instructed as to the Kubichans that once a seller of land has sold his property he is not subject to liability for injuries thereon caused by a dangerous condition, subject to specified exceptions. This instruction will be described in greater detail hereafter.

The jury rendered special verdicts in favor of all defendants. It specifically determined that Goldman and the Kubichans were not negligent and that while the Reids were negligent, their negligence was not a legal cause of plaintiff's injury.

On appeal, the plaintiff raised several contentions. He argued that (1) the Kubichans were not insulated from liability by their sale of the property; (2) the court erred in refusing to limit the scope of its instruction regarding a former landowner's possession to the Kubichans; (3) the court erred in rejecting evidence regarding provisions of the Los Angeles County Building Code and testimony by plaintiff's expert, and in refusing to instruct on plaintiff's theory of "negligence per se"; (4) misconduct by Goldman's attorney during closing argument deprived plaintiff of a fair trial and required reversal; and (5) the court erred in refusing to grant plaintiff leave to amend, failing to give a proper jury instruction, and improperly excluding plaintiff from the courtroom. The Kubichans cross-appealed arguing the court should have granted their motion for nonsuit based on Code of Civil Procedure section 337.1.

This matter comes before us on a petition for review and, accordingly, we will briefly describe the Court of Appeal decision as to the points which we will address.

As to the Kubichans' negligence, the Court of Appeal held that a vendor who actually negligently creates an unreasonably dangerous condition on his land is liable in the same manner as a nonvendor of property because his liability arises from his status as creator of the condition rather than as owner of the land. The court concluded that the trial court erred in its instruction on the issue, and that while the jury may have found superseding negligence absolving the Kubichans of liability, because of the instruction it may never have reached the issue; thus reversal was required as to the judgment for the Kubichans. The court did not discuss the issue of the limitation of the scope of the instructions.

Next, the court addressed plaintiff's claims regarding his theory of negligence per se. It found that the trial court erred in finding that the relevant building codes were inapplicable and in refusing to instruct on negligence per se.

The petition for review specified as issues the question of a landowner's liability following his divestment of ownership and control of the property and the Court of Appeal determination that the trial judge improperly excluded plaintiff from the courtroom. In his answer to the petition for review, the plaintiff responded to the above points and also discussed the

other issues raised before the Court of Appeal. He also asked that the affirmance of the judgment for Goldman be considered as well. Our opinion will be confined to the issues surrounding the Kubichans' liability as former landowners. The remaining issues will be governed by the Court of Appeal decision.

I

■ Plaintiff argues that the trial court erroneously instructed the jury regarding the Kubichans' liability.[1] The instruction given had its roots in the Court of Appeal decision in *Copfer* v. *Golden* (1955) 135 Cal.App.2d 623 [288 P.2d 90], and the Restatement Second of Torts, sections 352 and 353.[2] Plaintiff argues that these authorities were inapplicable to his claim against the Kubichans which was based upon their affirmative negligence in constructing the pool rather than upon their status as landowners. The Court of Appeal here agreed.

The court found that *Copfer* did not apply because the Kubichans, unlike the defendants absolved of liability in *Copfer,* had allegedly been actively negligent in their design and construction of the decorative pond. Thus, the court analogized the Kubichans to the developer of property held liable in *Sweeney* v. *Stone* (1968) 265 Cal.App.2d 693 [71 Cal.Rptr. 497], and therefore decided that their status as vendors of property was not significant in considering the independent basis for their liability. Finding that the "Kubichans' potential liability as the creator of an allegedly unreasonably

---

[1]The jury was instructed as follows: "The general rule of law is that once a seller of land has sold that land he is not subject to liability for injuries, sustained by a third person while on the land after the buyer has taken possession, which were caused by any dangerous condition, whether natural or artificial, which existed at the time the buyer took possession. [¶] This general rule has an exception where the seller conceals or fails to disclose to his buyer such dangerous condition and this exception is as follows: [¶] (a) The buyer does not know of the condition or the risk involved therein, and, [¶] (b) The seller knows of the conditions and the risk involved therein and has reason to believe that the buyer will not discover the condition or realize the risk."

[2]Section 352 states: "Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession."

Section 353 excepts from this rule a vendor "who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land" if "the vendee does not know or have reason to know of the risk" and "the vendor knows or has reason to know" of it "and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk." (Subd. (1).) Similarly, the section excepts a vendor who "actively conceals the condition," in which case liability "continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it." In the absence of active concealment, the vendor's "liability continues only until the vendee has had reasonable opportunity to discover the condition" and take precautions. (Subd. (2).)

dangerous condition did not cease at any fixed point after they transferred the subject property but continued until after their alleged negligence was superseded by that of another or was barred by the applicable statute of limitations," the Court of Appeal held that the trial court had erred in giving its instruction and reversal on this basis was therefore required.

In *Copfer,* Vaughn, Gertrude, Earl and Goldie Golden owned certain real property. In 1952, the other three conveyed their interests in, inter alia, a common portion of the property to Vaughn, who, from 1949, had used the property for storage of various material and equipment used in the course of his business. In 1953, a child playing on the property was injured, and she sued all four Goldens. The Court of Appeal found only Vaughn could be held liable, reciting in support the general rule that "a grantor of land is not subject to liability for injury sustained by a third person while upon the land after the grantee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time the grantee took possession." (135 Cal.App.2d at p. 630.)

Plaintiff argues that *Copfer* is of no assistance here because the asserted negligence of the three former owners whom the *Copfer* court found were not liable was not based on any affirmative conduct; they were sued merely as former owners rather than as positive actors. A review of *Copfer* reveals, however, that the language used by the court was in fact much broader in scope. The court discussed the rationale underlying the general rule of nonliability noting that one who has transferred ownership and control is no longer held liable because (1) he no longer has control and thus may not enter the property to cure any deficiency, and (2) he cannot control the entry of persons onto the property or provide safeguards for them. Thus, "'"The wrongdoer has not at the time [of the injury] any control over the subject-matter, or any power or right to remedy the evil. The damage in all such cases arises in fact from the continued use of the defective subject, and with that *the builder, who has parted with the title, possession, and control of it, has not and cannot have anything to do.*"'" (*Copfer* v. *Golden,* 135 Cal.App.2d at p. 632, quoting *Slavitz* v. *Morris Park Estates* (1917) 98 Misc. 314 [162 N.Y.S. 888, 889], italics added.) Thus, the "active or passive" role of the former owner vis-à-vis creation of the injury-causing condition was irrelevant to the question of liability. (See *Longfellow* v. *County of San Luis Obispo* (1983) 144 Cal.App.3d 379, 384 [192 Cal.Rptr. 580] [landowners may be liable for nuisances created by former owners which they have failed to abate; no liability for former owners].)

The development of the law of predecessor landowners' liability has been, in fact, somewhat murky. Three separate approaches have arisen regarding damages sustained by persons on private property due to artificial or natural

conditions existing on the land when the present owner or possessor assumed control. "[T]he ancient doctrine of *caveat emptor* has lingered on to a very large extent" in this area, albeit with some recent exceptions. (Prosser & Keeton on Torts (5th ed. 1984) § 64, pp. 446-447, fn. omitted.) In the Restatement view, described above, termination of liability occurs upon transfer of control except under specified circumstances. (Rest.2d Torts, *supra,* §§ 352, 353.) Comment a to section 352 observes that the reliance on the doctrine of caveat emptor may well have developed and persisted "because great importance always has been attached to the deed of conveyance, which is taken to represent the full agreement of the parties, and to exclude all other terms and liabilities. The vendee is required to make his own inspection of the premises, and the vendor is not responsible to him for their defective condition, existing at the time of transfer."

Prosser and Keeton take a more expansive view than simple application of the doctrine of "caveat emptor." They acknowledge the general rule, but observe that two exceptions have developed. "The first . . . is that the vendor is under a duty to disclose to the vendee any hidden defects which he knows or should know may present an unreasonable risk of harm to persons on the premises, and which he may anticipate that the vendee will not discover." (Prosser & Keeton, *supra,* § 64 at p. 447, fns. omitted.) This exception echoes those in Restatement section 353. In addition, a second exception "is found in a number of cases where the land, when it is transferred, is in such condition that it involves an unreasonable risk of harm to those outside of the premises." (*Id.,* at p. 448; see Rest.2d Torts, § 385.) The treatise concludes that even where liability continues after divestiture of possession, "it seems obvious that there must be some time limit upon the duration of the potential liability . . . . The emerging view is that the vendor is no longer liable once the vendee has had a reasonable time to discover and remedy the condition, unless the vendor has actively concealed it . . . ." (Prosser & Keeton, *supra,* § 64 at pp. 448-449, fns. omitted.)

A third view holds that if "the vendor has negligently created a dangerous condition, and has transferred the land in this dangerous condition to another, it is hard to see why on principle the vendor's liability to third persons should not depend on the likelihood of harm to them in fact. This would turn (in part) on the likelihood that the grantee would in fact admit such third persons to the premises without discovering the danger and remedying it or warning of its existence." (2 Harper & James, The Law of Torts (1956) § 25.28, p. 1519.) Thus, it is argued, the "mere transfer of title" should not be enough to shift responsibility, especially when the dangers were created by the vendor's affirmative negligence. (1 Dooley, Modern Tort Law (1982 rev. ed.) § 19.18, p. 468.)

Recently, the Supreme Court of New Jersey had occasion to review the various approaches described above in the context of the liability of a predecessor in title of a commercial property for injuries caused by the condition of a public sidewalk adjacent to the private property. The court summarized the three rules as follows: "One general rule has been that a seller of realty is not subject to liability for bodily injury suffered by third persons arising after the purchaser has taken possession, even though the seller may have been responsible for creation of the dangerous condition . . . . A second rule provides that the predecessor in title remains liable until the dangerous condition is corrected . . . . A third rule states that the predecessor in title remains responsible for a reasonable period of time after the conveyance." (*Cogliati* v. *Ecco High Frequency Corp.* (1983) 92 N.J. 402 [456 A.2d 524, 527-528].) The court concluded that "the preferable doctrine is that the predecessor in title who has created or maintained the dangerous sidewalk condition should remain liable to the injured pedestrian irrespective of the fact that the property has been conveyed. Since he is factually responsible, at least in part, for the hazard, he should not be immune from legal responsibility." (*Id.*, at p. 530.)

The court carefully restricted this holding to *public* property. It observed that "[d]ifferent rules of law may come into play in determining the liability of predecessors in title for injuries suffered on *private* property subsequent to the transfer of title. . . . In fact, historically and currently, the law has not been the same with respect to individuals who have been injured due to the conditions on the public sidewalk as opposed to private property. . . . *The public has a right to expect safe passage on the public sidewalk; no such broad right exists with respect to private property.*" (*Cogliati, supra,* 456 A.2d at p. 531, fn. 6, italics added.)

Generally, as to private property, other jurisdictions, no matter how soon after the transfer of ownership the accident occurs, have adhered to the rule that "The common-law rule of *caveat emptor* is applied strictly to a purchaser of real property. [Citations.] Absent a showing of fraud or deceit, the seller of realty is not liable to the purchaser or his tenants for negligence." (*Sosebee* v. *Hiott* (1981) 157 Ga.App. 768 [278 S.E.2d 700, 702] [fire four days after title passed]; *Martin* v. *1727 Corp.* (1983) 120 Ill.App.3d 733 [458 N.E.2d 990, 994] [injury occurred 29 days after new owner had possession and control; refused to extend liability until vendee can remedy known defect]; *Great Atlantic & Pac. Tea Co., Inc.* v. *Wilson* (Ind.App. 1980) 408 N.E.2d 144, 148 [11 A.L.R.4th 569] [injury 45 days after lease terminated; liability ordinarily depends on the power to prevent injury; possession therefore is determinative]; *Higgenbottom* v. *Noreen* (9th Cir. 1978) 586 F.2d 719 [finding instruction based on §§ 352 and 353 properly delineated Oregon law]; *Thone* v. *Nicholson* (1978) 84 Mich.App. 538 [269 N.W.2d 665, 667-

668] [reciting general rule that liability rests on one in control and possession].)

The one state which has at times taken a different approach is New York where a distinction has been drawn "between mere negligent maintenance of property and affirmative acts of negligence in the actual creation of a nuisance or dangerous condition. [Citations.] In the latter instance, ownership or possession of the property upon which the condition is found is not necessarily a prerequisite to responsibility for injury or damages which ·results thereon." (*Merrick* v. *Murphy* (1975) 83 Misc.2d 39 [371 N.Y.S.2d 97, 100] [it is significant, however, that this case deals with a latent rather than patent defect and the discussion is couched partly in terms of latent defects]; see also *Farragher* v. *The City of New York* (1968) 21 N.Y.2d 756 [288 N.Y.S.2d 232, 235 N.E.2d 218].)

Despite plaintiff's attempts here to distinguish his case as one in which the liability alleged is not based upon the Kubichans' status as landowners but rather as the creators of a negligent condition, this analysis does not bear up under scrutiny. While principles regarding negligence in manufacturing chattels (see Prosser & Keeton, *supra*, § 64 at p. 447) have in some instances been extended to negligent conditions on land, there has been no wholesale importation of one set of rules to the other context. Instead, the general rule of nonliability has been applied to conditions on the land created by the predecessor landowner, with the landowner's role as "creator" taking a secondary place.[3]

Plaintiffs in their motion for new trial, while arguing that the Kubichans' liability should not be evaluated in terms of their status as landowners, asserted instead that "Their liability should properly be determined within the context of their roles as designers and builders. As such, their conduct should appropriately be evaluated within the same parameters commonly used to evaluate the conduct of others who engage in the construction of improvements upon real property." The analyses of plaintiff and Court of Appeal are based on a mixture of rules relating to contractors, rules relating to manufacturers of chattels, and rules relating to landowner liability.

■ In *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], we discussed under what circumstances a departure from the general rule laid down in Civil Code section 1714

---

[3]One exception exists where the prior landowner is the contractor or builder of the entire property. Generally different rules have applied in this context to professional developer/ owners. (See, e.g., *Sweeney* v. *Stone, supra*, 265 Cal.App.2d 693; see also *Dow* v. *Holly Manufacturing Co.* (1958) 49 Cal.2d 720, 724-725 [321 P.2d 736] [discussing privity of contract between contractor, vendor, and vendee].)

might be appropriate. That section provides that "(a) Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ."

A decision *not* to apply that principle "involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian, supra,* 69 Cal.2d at pp. 112-113.)

In addition to describing the factors relevant to the determination of whether liability should be imposed upon a particular class of defendants, *Rowland* also represented a major departure from the rigid classification of negligence as active or passive, and the assignment of risk based on such classifications as well as upon the status of the person injured due to conditions existing on real property. Thus, in *Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 176 [101 Cal.Rptr. 908], we reiterated *Rowland*'s determination that "[t]he active/passive negligence concept, . . . no longer represents an inflexible limitation upon the imposition of liability to trespassers or licensees." We held in *Mark* that the landlords of an apartment had not breached any duty to a tenant who was electrocuted while standing on the fire escape of the balcony attempting to unscrew the lightbulb of a streetlamp owned by a public utility. The landlords had no ownership or control of the lamp and thus could not be held liable.

In the course of considering liability for landowners in the post-*Rowland* era, we have recently had occasion to further discuss the questions of affirmative versus passive negligence and natural versus artificial conditions of the land. In *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358 [178 Cal.Rptr. 783, 636 P.2d 1121], we addressed the issue of the liability of a possessor of land for injuries caused to persons off the land by natural conditions of the property. Chief Justice Bird emphasized that "[m]odern cases recognize that after *Rowland,* the duty to take affirmative action for the protection of individuals coming upon the land *is grounded in the possession of the premises and the attendant right to control and manage the premises.*" (*Id.,* at p. 368, italics added.) In support of the conclusion that "mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act" (*id.,* at p. 370), we there reiterated Justice Mosk's observation that

"the right of supervision and control 'goes to the very heart of the ascription of tortious responsibility . . . .' (*Connors* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 874 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224] [dis. opn. of Mosk, J.].)" (*Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d at p. 369.) *Sprecher* demonstrates that we have placed major importance on the existence of possession and control as a basis for tortious liability for conditions on the land. (See also, *Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 848 [206 Cal.Rptr. 136, 686 P.2d 656] [successor condominium complex owner could be held liable for injuries caused by sign erected by predecessor on land owned by city where successor maintained the sign for benefit of its members].) Moreover, *Sprecher* demonstrates that the distinction between active and passive negligence, relied upon by the Court of Appeal here, is no longer a favored one.

In a similar vein, we recently reiterated that "[a] defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control. Where the absence of ownership, possession, or control has been unequivocally established, summary judgment is proper. [Citations.]" (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) While our *Isaacs* discussion dealt with the alleged liability of an insurer, rather than that of a predecessor owner, for the dangerous condition of the property of one of its clients, the language used was broad and in conformance with cases such as *Copfer.* Thus, generally, we have continued to treat ownership and control as a fundamental requirement for ascribing liability.

The ascription of liability in this context to a party with control is also reflected in the usually applicable insurance coverage. Plaintiff essentially concedes that the homeowners' policy covering the Kubichans during their ownership of the premises where the accident occurred would not provide insurance for the injury here. This result is consistent with the limitation of such insurance to coverage for injuries caused by an "occurrence" which is usually defined in terms such as "'an accident . . . which results, during the policy period, in bodily injury neither expected nor intended from the standpoint of the Insured.'" (See *Atlantic Mutual Ins. Co.* v. *Travelers Ins. Co.* (1983) 147 Cal.App.3d 1054, 1056 [195 Cal.Rptr. 476]; 1 Couch on Insurance 2d (1984) § 1:61, p. 152-157.) As the Court of Appeal observed in a case where it was claimed that a policy, which applied when a boiler was installed, provided coverage for a fire attributable to the boiler which occurred after the policy term expired, "Accepted popular, as well as legal definition, would call [the fire and not the boiler installation] the 'accident.'" (*Maples* v. *Aetna Cas. & Surety Co.* (1978) 83 Cal.App.3d 641, 650 [148 Cal.Rptr. 80]; *Atlantic Mutual Ins. Co.* v. *Travelers Ins. Co., supra,* 147 Cal.App.3d at p. 1056.)

■ Plaintiff nonetheless asserts that the Kubichans' renters' insurance which was in effect on their new residence at the time of the injury here provides coverage. He argues that while the policy excludes coverage for "bodily injury or property damages arising out of any premises, other than an insured premises, owned, rented or controlled by any Insured," that exclusion does not bar coverage under the policy's "comprehensive personal liability coverage." He contends that the premises limitation serves only to restrict "premises liability coverage" to properties described within the policy, but does not constitute a geographical limitation on claims relating to the Kubichans' "tortious personal conduct."

Consideration of the authorities cited by plaintiff demonstrate that his convoluted reasoning is not supported. For example, in *Nat. Farmers U. Prop. & Cas. Co., etc.* (Utah 1978) 577 P.2d 961, the plaintiff issued a liability policy which covered a mounted posse on their drill grounds. The captain of the posse also carried homeowner's insurance which used the same exclusion language as the policy asserted here. Haggen was injured, allegedly due to the captain's negligent failure to close a gate from the posse grounds which allowed a horse to escape onto the highway where it was struck by a vehicle in which Haggen was a passenger. The homeowner's insurance carrier refused to contribute to a settlement with Haggen.

The plaintiff sought contribution asserting that the incident, namely, the horse-automobile collision, "did not arise out of any premises, but occurred strictly by the negligent manner in which Story controlled the posse. In other words, there was no causal nexus between the accident and Story's control, if any, over the property." (577 P.2d at p. 962.) Construing the term "arising out of any premises" the Utah Supreme Court found the accident fell under the premises exclusion. The escaping horse was the "active force." The use of the term "'escape' connotes a removal from a geographical location caused by a loss of control by the one responsible for confinement. To confine the animal to the drill field, there was an enclosure around the uninsured premises. Captain Story's alleged negligence was his failure to close the gate and thus prevent the escape. *The alleged acts arose from, originated, and were connected with the uninsured premises, and the exclusion in his homeowner's policy was applicable.*" (*Id.*, at p. 964, italics added.)

Similarly, here, the Kubichans' alleged negligence was their failure to design a safe pond. The child's falling or climbing into the pond, and the lack of supervision of the child, were the immediate forces leading to the injury. The alleged acts all "arose from" the uninsured premises and thus were not covered. Were this not the case, the premises exclusion would essentially become meaningless as to any property over which the insured

may have at any time had control. As we stated in *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841], "Generally speaking, the personal liability provisions of a homeowner's policy bind the insurer to pay damages for which the insured shall become liable *as a result of accidents in and around his home."* (Italics added, fn. omitted.) We recognized "that the personal liability provisions of a homeowner's policy also provides [*sic*] coverage for certain accidents occurring away from the home" (*id.,* at p. 197, fn. 2), but we evidenced no inclination to give such coverage as broad an interpretation as is urged here.

As a matter of "Accepted popular, as well as legal definition," we believe that a renter or homeowner, and his insurer, would not ordinarily intend or reasonably expect coverage for the accident such as the one involved here under policy terms similar to those relied upon here. (See *Herzog* v. *National American Ins. Co., supra,* 2 Cal.3d at p. 197; *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 112 [52 Cal.Rptr. 569, 416 P.2d 801].) This is not to say such coverage could not be obtained; it is to say, however, that it would require an extension of presently typical coverage.

Another area which leads us to believe that this kind of extension of liability is not in accordance with public policy is the limitations of actions for liability for patent and latent defects provided in sections 337.1[4] and

---

[4]"(a) Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following: [¶] (1) Any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to, or survey of, real property; [¶] (2) Injury to property, real or personal, arising out of any such patent deficiency; or [¶] (3) Injury to the person or for wrongful death arising out of any such patent deficiency.

"(b) If, by reason of such patent deficiency, an injury to property or the person or an injury causing wrongful death occurs during the fourth year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within one year after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than five years after the substantial completion of construction of such improvement.

"(c) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action.

"(d) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action.

"(e) As used in this section, 'patent deficiency' means a deficiency which is apparent by reasonable inspection.

"(f) Subdivisions (a) and (b) shall not apply to any owner-occupied single-unit residence."

337.15[5] of the Code of Civil Procedure. In *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624 [147 Cal.Rptr. 486, 581 P.2d 197], we considered the scope of section 337.15. A surety had been named as a defendant in an action alleging latent construction defects where the building was completed in 1962 but the action alleging liability for the defects was not filed until 1974, 12 years later. The surety contended that the then applicable section should be interpreted to include it,[6] thus barring the action as untimely because filed beyond the 10-year period provided in subdivision (a).

We rejected the surety's claim that failure to apply the section to it would constitute a denial of equal protection. "We encounter no difficulty in finding a rational basis for the legislative classification distinguishing contractors and sureties. A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise." (*Regents of University of California* v. *Hartford Acc. & Indem. Co.*, *supra*, 21 Cal.3d at p. 633, fn. 2.) How much more true is this statement with regard to the situation of a homeowner against whom liability is alleged after transfer of possession and control to another? Whether he hired someone to do the work, or did it himself, or whether his assertedly negligent conduct was passive or affirmative, he is even less likely to have capital to devote to providing protection for those coming onto land with which he has long since broken contact. In contrast to the professional builder or contractor who in all likelihood carries extensive insurance as part of doing business, the "do-

---

[5]"(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection.

". . . . . . . . . . . . . . . . . . . .

"(d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action.

"(e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action.

"(f) This section shall not apply to actions based on willful misconduct or fraudulent concealment.

"(g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, . . ."

[6]The section was amended in 1979 to expressly apply to sureties.

it-yourself" homeowner is unlikely to contemplate that his weekend project may expose him to liability for an unlimited time.

The defect alleged here is a patent one as a matter of law. ■ Such a defect "is one which can be discovered by such an inspection as would be made in the exercise of ordinary care and prudence. [Citations.] This is contrasted with a latent defect, one which is hidden and which would not be discovered by a reasonably careful inspection. [Citations.]" (*Wagner* v. *State of California* (1978) 86 Cal.App.3d 922, 927 [150 Cal.Rptr. 489]; see *Baker* v. *Walker & Walker, Inc.* (1982) 133 Cal.App.3d 746, 763 [184 Cal.Rptr. 245]; Code Civ. Proc., §§ 337.1, subd. (e), 337.15, subd. (b).)

In *Mattingly* v. *Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506 [167 Cal.Rptr. 292], 13 years after the construction of a pool in an apartment complex, an 18-month-old child fell in and suffered injury. The court found section 337.1 barred an action against the pool constructor. The plaintiff asserted that the absence of a fence around the pool "would not be patently deficient to the untrained eye of the user, and whether or not the ordinary user would recognize the deficiency is a question of fact for the jury." (*Id.*, at p. 510.) The court disagreed, observing instead that "The test used to determine whether a deficiency is patent is not a subjective one, applied to each individual user; rather, it is an objective test based on the reasonable expectations of the average consumer." (*Id.*, at p. 511.) ■ Similarly, despite plaintiff's claims here that the pool was murky and it was not clear that it was more than approximately 10 inches deep, an objective observer would conclude that the danger in a pool containing even 10 inches of water to an unguarded child of plaintiff's age was patent.[7]

Section 337.1, subdivision (d), provides that the four-year limitation prescribed in the section may not be asserted as a defense "by any person in actual possession or the [*sic*] control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action." This exclusion does not apply to the Kubichans, because

[7]Moreover, here, the Reids had made alterations to the pool and had drained it at least once. They were fully aware of the condition of the pool and the lack of any protection which constituted the defect asserted by plaintiff. A defect cannot still be considered "latent" as to a third party after the present owner or possessor of the property has become aware of the defect which was discoverable by "an inspection as would be made in the exercise of ordinary care and prudence." (See *Wagner, supra,* 86 Cal.App.3d at p. 927.) Even under the most expansive theories of liability, one could argue that the Kubichans' responsibility terminated by the time the accident here took place. Their successors obviously had knowledge of and time to correct any deficiencies which might have existed and which were easily discoverable. Any defect thus was "patent" to the vendor by the time of the accident, and the vendee obviously had ample time and opportunity to correct it.

they were not in "actual possession or . . . control" of the property when the accident occurred.

Subdivision (f), however, provides that subdivisions (a) and (b), which are the crux of the limitation, "shall not apply to any owner-occupied single-unit residence." The Court of Appeal here concluded that because the relevant time for commencement of the limitation period specified in section 337.1 is the time the improvement is substantially completed rather than the time the cause of action accrues, "the status of ownership of the subject property at the time of the substantial completion of the improvement determines the applicability of the exclusion contained in section 337.1, subdivision (f) . . . ."

We have found little relevant statutory history. Both parties rely in their briefing on letters from Howard H. Morgridge, a representative of the American Institute of Architects, and Senator William E. Coombs, author of the bill, to then Governor Ronald Reagan regarding the bill. The Morgridge letter states: "The bill does not apply to the owner or occupant of property since he is in a position to see and observe the patent defect and to correct it. The public and those using the property are thus protected against defects which are observable and should be corrected." The Coombs letter explains "Thus the effect of this bill is to give the owner four years . . . in which to discover obvious defects in the structure. If he does not make a reasonable inspection in that length of time, it is he, and not the contractor or the architect, who must be responsible to a third party who is injured by reason of the defect. This does not mean that an injured party loses his right to be compensated nor does it mean that he loses his right against a negligent party for a latent defect. This bill merely fixes the responsibility for patent defects on the person who is in the best position to discover the defect and prevent the injury."[8]

It appears that the exemptions from the otherwise applicable limitations period may have been based on the assumption that those in control and possession of the premises, such as an owner-occupier, would have the best opportunity to uncover any patent defects in their property. Once such control and termination ends, however, this presumption no longer applies. Thus, the Legislature may well not have expressly considered the situation of liability for an owner-occupier who sells his property because it assumed

---

[8] Note the Coombs' letter views the restrictions on raising the four-year limitations period as a defense as *not* applicable to contractors or architects of owner-occupied homes who apparently are seen as relieved of liability after four years. We express no opinion regarding the admissibility and weight of this letter because to do so is unnecessary in view of our ultimate treatment of this issue. (See *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-701 [170 Cal.Rptr. 817, 621 P.2d 856].

that potential liability would terminate at that point.[9] In any event, because of our conclusion that liability does indeed end with transfer of possession and control in cases such as this, we need not construe the statute further. The provision regarding patent defects is instructive, however, because it demonstrates by its shorter limitations period, as well as by its exemptions for professionals engaged in home improvements, that the Legislature intended to limit liability for those who did not have the continuing opportunity to discover and correct such defects. (Cf. *Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171, 184-185, fn. 4 [183 Cal.Rptr. 881] [where damage from patent defect is to owner-occupied single-unit residence, plaintiff has three years under Code Civ. Proc., § 338, subd. (2)].)

After consideration of the relevant variables reviewed above, we have concluded that we should not depart from the existing rules restricting liability of predecessor landowners. Our recent emphasis on the importance of possession and control as a basis for liability comports with our conclusion, as does our analysis of the factors enunciated in *Rowland* v. *Christian, supra,* 69 Cal.2d at pages 112-113. The injury here was in a strict sense foreseeable, but at the time the Kubichans built the pool for their own use the prospect that a future landowner who would allow children on the premises would not take appropriate precautions was a tenuous proposition. Unquestionably, plaintiff suffered injury. The closeness of the defendants' conduct and plaintiff's injuries, is, as mentioned in regard to foreseeability, not very great. The Kubichans had no control over the backyard or of access to it at the time the injury occurred; nor could they affect the degree of supervision exercised over persons on the premises. They played no direct role in the circumstances of this particular accident, nor would they have been able at the time to take additional precautions to prevent its occurrence. Moreover, as to moral blame, such a concept is difficult to apply to anyone involved in this case. Arguably, however, the greater "blame" should be placed on those in present control of the circumstances who have the power to make changes, take needed precautions, and control the entry of persons on the land.

As to the burden to the defendant and consequences to the community, as we have discussed, given the importance usually placed on control before liability is ascribed, we believe that the weight of this factor tends towards absolving the Kubichans and other homeowners who make similar improvements to their property. Our belief is strengthened by consideration of statutory limitations placed on the liability of professional builders and

---

[9]It is also interesting to note plaintiff's stress on the Kubichans as owner-occupiers of the home in this context, and his disclaimer of reliance on the Kubichans' relation to their land in the argument regarding imposition of liability.

contractors. The liability of the homeowner as urged by plaintiff here would be temporally unlimited. So long as the improvement existed, the landowner could be held liable no matter how much time had elapsed since he had done the work and transferred the property; the potential cloud of liability over the head of any do-it-yourself owner would be farreaching.[10] The landowner who made an improvement which, in terms of the needs and status of his family and situation, was adequate and safe, and who sold the property to another who was made aware of the condition, could be held liable despite use of the improvement by persons over whom he has no control.

Finally, as to insurance, as reviewed above, it appears that such insurance is not now generally available. Moreover, because we are talking of conditions of land, and most homeowners and many renters have insurance, in all likelihood insurance now usually covers the liability of those with control and possession at the time of such accidents. Given the potential unlimited liability of predecessor landowners, and the difficulty for insurers and former owners to ascertain the condition of property previously sold over which the predecessor landlord has no present right of access or control, insurance for such risks would likely be difficult and costly to obtain.

Weighing all the factors involved, primary importance in ascribing liability here must be placed upon ownership and control of property. Therefore, we will reverse the Court of Appeal's determination that the judgment for the Kubichans should be reversed, on the ground that the trial court's instruction, utilizing the concepts embodied in *Copfer* v. *Golden, supra,* 135 Cal.App.2d 623, and sections 352 and 353 of the Restatement Second of Torts, was proper.

## II

Plaintiff argues that the trial court should have given an instruction limiting the application of the *Copfer* v. *Golden* instruction discussed in the first section of this opinion to the Kubichans. However, no request was made until after the jury had been instructed and had retired to deliberate. Plaintiff fails even to address the timing of his request.

In any event, Goldman's situation as a landowner[11] differed from that of the Kubichans. He had not constructed the pond nor was he in possession of the property at the time the accident occurred, but he was still its legal

---

[10]Our holding here relates only to the liability of "do-it-yourself" home improvers and is not intended to affect, establish, or diminish any liability of commercial builders, contractors or renovators.

[11]The trial court expressly advised the jury that he found that Goldman was the owner of the property.

owner. The challenged instruction expressly addresses the general rule of law "that once a seller of land has sold that land, he is not subject to liability for injuries . . . ." It therefore was by its own terms and under the facts of the case not applicable to Goldman. Thus, even if the court were inclined to find that plaintiff's untimely motion for a limited instruction should nonetheless be afforded consideration on the merits, no basis for finding error appears.

## III

Plaintiff argued, and the Court of Appeal agreed, that the trial court erroneously refused to allow introduction of evidence relating to the Kubichans' alleged negligence per se. Because we have concluded that the Kubichans' liability ended at the time they sold their property the issue of upon what basis negligence might be proved is no longer relevant. Therefore, we need not further consider the propriety of the Court of Appeal's opinion on this issue because it is now moot.

## IV

Our review has been limited to those issues relating to the liability of predecessor landowners, the determination of which formed the basis for the Court of Appeal's decision reversing the trial court's judgment in favor of defendants. We decline to reach the remaining issues dealt with by the Court of Appeal, none of which formed the basis for that court's reversal of the trial court judgment. (See Cal. Rules of Court, rule 29.2(a).) For the reasons stated above, we therefore reverse the judgment of the Court of Appeal.

Mosk, J., Broussard, J., Reynoso, J., and Loncke (Rudolph R.), J.,* concurred.

**GRODIN, J.**—I concur in the result, though not in the reasoning, of the majority opinion.

For starters, I note that even if the trial court did err in instructing the jury on the Kubichans' liability, that error was not likely to have affected the verdict. The jury entered a special verdict finding the Reids negligent—presumably on the basis of their conduct in refilling the pool and making alterations to its exterior—but finding also that their negligence was not a legal cause of plaintiff's injury. Since the Kubichans' relationship to the

---

*Judge, Sacramento Municipal Court, assigned by the Chairperson of the Judicial Council.

injury was even more remote than the Reids', the prospect of the jury finding the Kubichans to be liable—even if it found them to be negligent—seems exceedingly slight. On that ground alone the judgment can be affirmed. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

If it were necessary to the decision of this case, I think more could be said in favor of the plaintiff's position than the majority allows. The Restatement Second of Torts, upon which the majority heavily relies, itself distinguishes in certain contexts between conditions which a vendor of land has created, and those for which he is not actively responsible. With respect to persons *outside* the land, the Restatement proposes that a vendor who has created a condition which involves unreasonable risk of harm "because of its plan, construction, location, disrepair, or otherwise" may be held liable (whether or not he has concealed the condition) until the vendee discovers the condition and has reasonable opportunity to take effective precautions against it. (Rest.2d Torts, § 373, subds. (1), (2).) The comment to section 373, subdivision (2) explains: "Where the vendor has himself created the unreasonably dangerous condition, his liability to persons outside of the land stands upon the same footing as if he were not a vendor but a third person who had created the condition, such as a trespasser or a contractor."

Harper and James argue that "no sound basis" exists for distinguishing, in the case of conditions created by the vendor, between injury occurring on and off the land (2 Harper & James, The Law of Torts (1956) § 27.18, p. 1520), and in light of this state's jurisprudence, which refuses to draw fine distinctions between the duties owed to different classes of the general public who are foreseeable victims of negligence (see, e.g., *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]), their criticism may well have merit. Moreover, while it is probably true in this case that even the more extended rule of section 373 of the Restatement would not result in liability on the part of the Kubichans—it being apparent that the Reids had both discovered the condition of the pond and had reasonable opportunity to take effective precautions against its risk—the liability of a contractor in this state would not be so limited. (See *Stewart* v. *Cox* (1961) 55 Cal.2d 857 [13 Cal.Rptr. 521, 362 P.2d 345]; *Dow* v. *Holly Manufacturing Co.* (1958) 49 Cal.2d 720 [321 P.2d 736].) If it is good policy to impose upon vendors who themselves create unreasonably dangerous conditions the same liability as a contractor would have, whether the harm occurs on or off the land, then imposition of liability upon the Kubichans might be appropriate.

I think it wise to refrain from unnecessary speculation as to the state of the common law in this regard, however, in light of recently enacted legislation which imposes upon transferors of real property the obligation to

make certain disclosures to the buyer. (Civ. Code, § 1102 et seq., operative Jan. 1, 1987.) Among the information required to be supplied is an identification and explanation of any room additions, structural modifications, or other alterations or repairs made without necessary permits, or not in compliance with building codes. (Civ. Code, § 1102.6.) Willful or negligent failure to comply with the disclosure requirements may result in liability "in the amount of actual damages suffered by a transferee." (Civ. Code, § 1102.13.) What effect, if any, these new provisions may have upon problems of the sort presented here is a question best left to a case in which it is squarely presented and briefed.

Bird, C. J., concurred.