Rodney Allen STALTER, by Lori Ann STALTER, His Conservator and Lori Ann Stalter, Individually, Plaintiffs,

v.

IOWA RESOURCES, INC., Iowa Power and Light Company, Farmer's Cooperative Exchange, State of Iowa and Iowa Interstate Railroad Ltd., Defendants.

IOWA RESOURCES, INC., and Iowa Power and Light Company, Appellants,

v.

IOWA INTERSTATE RAILROAD LTD., Seedburo Equipment Company, Heartland Rail Corporation and Hawkeye Land Company, Defendants to Cross–Petition,

and

Chicago Pacific Corp., f/k/a Chicago, Rock Island and Pacific Railroad Company, Appellee.

No. 89–1526.

Supreme Court of Iowa.

April 17, 1991.

See also 467 N.W.2d 586.

Gregory R. Brown, Hugh J. Cain and Thomas G. Fisher, Jr., of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellants.

Henry A. Harmon and Ken A. Winjum of Grefe & Sidney, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN and SNELL, JJ.

McGIVERIN, Chief Justice.

This third-party action presents questions concerning liability for contribution and indemnity in a personal injury case.

Defendants, Iowa Resources, Inc., and Iowa Power and Light Company (collectively referred to as Iowa Power) appeal a district court ruling sustaining third-party defendant Chicago Pacific Corporation's (CPAC) motion for summary judgment. We transferred the case to our court of appeals, which reversed the district court's grant of summary judgment.

We granted CPAC's application for further review and now vacate the decision of the court of appeals and affirm in part and reverse in part the district court judgment.

I. *Background facts and proceedings.* Chicago, Rock Island & Pacific Railroad Company (Rock Island) constructed a railroad spur near Farmer's Cooperative Exchange (Coop) in Pella, Iowa, in 1970. The spur was constructed underneath 69,000 volt (69kV) electric transmission lines owned by Iowa Power.

Rock Island maintained its interest in the spur near Coop until it filed for bankruptcy. At that time, Rock Island transferred all of its property to a bankruptcy trustee who, on June 1, 1984, deeded portions of that property, including the spur near Coop, to CPAC.[1] Thereafter, CPAC quit claimed all of its Iowa real estate to either Heartland Railway Co. or Hawkeye Land Co., with the exception of the right to convey easements for power line purposes, which it reserved to itself. CPAC granted such an easement to Iowa Power on October 29, 1985. That easement included the power line passing over the spur near Coop.

On May 14, 1987, Rodney Stalter was atop a railroad car, owned by Iowa Interstate Railroad and located on the spur near Coop, taking grain samples. Stalter's brass sampling device came into contact with an Iowa Power transmission line passing electric current through Stalter and resulting in severe injuries to him.

Plaintiffs, Rodney Allen Stalter, by Lori Ann Stalter, his conservator and Lori Ann Stalter, individually (collectively referred to as Stalters), sued Iowa Power, Coop, Iowa Interstate Railroad and the State of Iowa for damages resulting from the electrical accident. Stalters did not sue CPAC.

Iowa Power, contending that construction of the spur reduced clearance between the ground and its lines below that required by safety standards, cross-petitioned against CPAC, among others, seeking contribution and indemnity for any judgment Stalters might recover from Iowa Power. CPAC moved for summary judgment, Iowa R.Civ.P. 237, contending that, as a matter of law, it was not liable to Iowa Power for contribution or indemnity. The district court sustained CPAC's summary judgment motion and dismissed it as a third-party defendant.

Iowa Power appealed. The court of appeals reversed.

On further review, we now consider whether the district court erred in ruling that, as a matter of law, CPAC was not

**1.** CPAC concedes, for purposes of its application for further review, that CPAC and Rock Island may be considered as the same entity.

liable to Iowa Power for contribution or indemnity.

The record for summary judgment purposes consisted of the pleadings, numerous depositions, exhibits, affidavits and responses to discovery.

II. *Summary judgment standard.* On appeal, we view the whole record in determining whether summary judgment was appropriate. *Walker Shoe Stores, Inc. v. Howard's Hobby Shop*, 327 N.W.2d 725, 728 (Iowa 1982); *Tasco, Inc., v. Winkel*, 281 N.W.2d 280, 282 (Iowa 1979). Summary judgment is appropriate if the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c). "[A] fact issue is generated if reasonable minds can differ on how the issue should be resolved." *Thorp Credit, Inc. v. Gott*, 387 N.W.2d 342, 343 (Iowa 1986).

III. *Contribution.* Iowa Power asserts that, under tort theories of premises liability and negligence, CPAC would be jointly liable with Iowa Power to Stalters for injuries Stalter suffered on May 14, 1987. Thus, Iowa Power argues that CPAC is liable to it for contribution. *See* Iowa Code § 668.5 (1987) (a right of contribution exists between or among two or more persons who are liable upon the same indivisible claim). Iowa Power contends the district court erred when it ruled otherwise.

■ A. *Premises Liability.* Iowa Power says CPAC built a spur on CPAC's property in 1970, under Iowa Power's transmission lines. Iowa Power argues that CPAC's spur reduced clearance below the minimum required by state law and, in addition, CPAC failed to notify Iowa Power of the reduced clearance. These facts, Iowa Power contends, make CPAC liable to Stalters under a theory of premises liability. CPAC responds that the theory of premises liability is not applicable to this case because CPAC did not own the spur when Stalter was injured.

It is undisputed that, on May 14, 1987, CPAC no longer possessed any ownership interest in the spur, upon which Stalter was injured, or the area surrounding it. At that time, the spur was owned by a third party, either Heartland or Hawkeye. Iowa Power maintains, however, that a present ownership interest in the spur is not required for CPAC to be held liable to Stalters under the theory of premises liability.

We have previously stated that when the owner of a premises disposes of that premises the owner is no longer liable for injuries to persons upon the property because the former owner is in no position to control the use of the premises. *Upp v. Darner*, 150 Iowa 403, 407, 130 N.W. 409, 410 (1911). The former owner's duties to persons upon the land are at an end. *Id.* These principles are in accord with Restatement (Second) of Torts section 352 (1965) which provides:

Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

The rationale underlying the general rule that one who has transferred ownership and control is no longer held liable is that the former owner no longer has control and thus may not enter the property to cure any deficiency, and, he/she cannot control the entry of persons onto the property or provide safeguards for them. *Preston v. Goldman*, 42 Cal.3d 108, 114, 720 P.2d 476, 479, 227 Cal.Rptr. 817, 820 (1986).

Iowa Power does not dispute our general rule that former owners are not liable for injuries to persons upon property once the current owner has taken possession. Rather, Iowa Power suggests that we should carve out an exception to the general rule similar to the exception created by Restatement (Second) of Torts section 353. Section 353 provides:

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee or other persons upon the land

with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

We need not decide whether the exception stated in section 353 should be available in Iowa. Even if we gave Iowa Power the benefit of this exception, it has failed to demonstrate why summary judgment was not proper in this case. *See* Iowa R.Civ.P. 237(e) (when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response must set forth specific facts showing there is a genuine issue for trial). Iowa Power has failed to identify facts in the record showing that genuine issues for trial exist in at least three respects.

1. *Obvious conditions.* Restatement (Second) of Torts section 353 comment b, in part, states:

The vendor [CPAC] is under no duty to either his vendee [Heartland or Hawkeye] or those who may be expected to enter upon or use the land in his right ... to warn the vendee of the extent of the risk involved in an obvious condition, unless the condition is such that the vendee would be unlikely to appreciate the extent of the risk involved.

Jurisdictions reviewing the application of section 353 have granted vendors' summary judgment motions, holding that section 353 does not apply, when the condition and the extent of the risk created by the condition are both obvious. *See, e.g., Counts v. MK–Ferguson Co.*, 680 F.Supp. 1343, 1348 (E.D.Mo.1988) (summary judgment granted to vendor where condition causing injury was open and obvious; no reason to believe that vendees would not discover risk involved); *Aitken v. Starr*, 99 N.M. 598, 601, 661 P.2d 498, 501 (Ct.App.1983) (summary judgment granted to former owner of trailer park in suit by plaintiff who sustained an electrical injury when an antenna he was dismounting came into contact with overhead power lines; power lines were obvious and, therefore section 353 did not take effect); *Bailey v. Gammell*, 34 Wash. App. 417, 420, 661 P.2d 612, 614 (1983) (vendor has no duty to warn of the extent of the risk in an obvious condition; summary judgment granted).

In this case, there is no dispute in the record that the spur, the power lines, the clearance beneath the power lines and the danger created by low hanging, high voltage power lines were all obvious conditions such that the vendee would appreciate the risk. Thus, it appears Iowa Power has not satisfied this requirement of section 353.

2. *Vendee's duty to inspect.* Restatement (Second) of Torts section 353 comment d, in part, states:

A vendor [CPAC], innocent of conscious deception, is entitled to expect, and therefore has reason to believe, that his vendee [Heartland or Hawkeye] will discover a condition which would be disclosed by such an inspection as the vendee should make before buying the land and taking possession of it or before throwing it open to the entry of others. A vendor, therefore, is not required to exercise care to disclose dangerous conditions or to have an ordinarily retentive memory as to their existence, unless the condition is one which such an inspection by the vendee would not discover or, although the condition would be so discovered, the vendor realizes the risk involved therein and has reason to believe that the vendee will not realize it.

Iowa Power does not contend that CPAC consciously deceived its vendee. Therefore, under section 353, CPAC had no duty to disclose conditions to the vendee, if the condition and the risk created by the condition were discoverable by an inspection of the spur prior to its purchase. *See* Restatement (Second) of Torts section 353 comment d; *see also Bailey v. Gammell,* 34 Wash.App. 417, 420, 661 P.2d 612, 614 (1983) (vendor is entitled to expect that vendee will discover a condition which would be disclosed by such an inspection as the vendee should make before buying the land).

Section 353 contemplates that CPAC was entitled to expect that the vendee conducted an inspection of the spur prior to purchasing it. As we already stated, there is no dispute that the spur, the power lines, the clearance beneath the power lines and the potential risk created by that situation were all obvious. The conditions creating this situation could all have been discovered by an inspection of the area surrounding the spur prior to its purchase. Thus, even if we were to adopt section 353, the vendee's ability to discover the conditions resulting in Stalter's injuries would seem to relieve CPAC from any liability as the vendor of the property.

3. *Vendor's liability is finite.* Restatement (Second) of Torts section 353 comment g, in part, states:

> The liability of the vendor [CPAC] stated in this section does not continue for an indefinite period throughout the subsequent history of the land sold. Where there is no active concealment by the vendor, it continues only until the vendee [Heartland or Hawkeye], or his successors, have had adequate time and opportunity, through occupation of the land or otherwise, to discover the existence of the condition, and to take effective precautions against it by repair or other means. In determining what is sufficient opportunity, various factors are to be considered. One is time elapsed.... A second is the nature of the condition. ... A third is the use made of the land by the vendee.

CPAC, as vendor, could be held liable for premises liability only until the vendee had a reasonable opportunity to discover the low clearance over the railroad spur and eliminate that dangerous condition. *See* Restatement (Second) of Torts section 353 comment g; *see also Friberg v. Fagen,* 404 N.W.2d 400, 403 (Minn.Ct.App.1987) (summary judgment proper when vendee had reasonable time, six years, to discover and remedy defective wiring); *O'Connor v. Altus,* 67 N.J. 106, 114–15, 335 A.2d 545, 549 (1975) (nine years is much more than a reasonable time for vendee to have discovered and cured alleged defective doorway and side light); *Farragher v. City of New York,* 26 A.D.2d 494, 496, 275 N.Y.S.2d 542, 544 (App.Div.1966) (vendee did not have reasonable time to install sprinkler system where it is conceded that it would have taken 90 days to install sprinkler system; vendee received property by conveyance on June 4, and death resulting from failure of premises to have sprinkler system occurred on July 12).

The following evidence is relevant in determining whether the vendee had reasonable opportunity to discover and eliminate the inadequate clearance between the spur and the power lines: vendee's ownership and control of the spur for more than eighteen months prior to Stalter's accident; the obvious nature of the dangerous condition; vendee's ability to discover the condition, prior to Stalter's accident, by an inspection of its property; fact that the condition injuring Stalter was not located in a remote area; and, fact that the insufficient clearance problem was corrected almost immediately after the accident showing that little time was needed to correct the condition.

We conclude the evidence establishes, without dispute, that prior to May 14, 1987, the vendee had reasonable opportunity to discover the low transmission lines over the spur and raise them to a safe height or require Iowa Power to do so.

For the reasons we have outlined above, Iowa Power cannot establish CPAC's liability by relying on section 353. Therefore, even if we were to adopt section 353, the general rule, that when the owner of a

premises disposes of that premises he/she is no longer liable for injuries to persons upon the property, applies in this case. The district court properly granted CPAC summary judgment on the premises liability issue.

■ B. *Negligence.* Iowa Power asserts that CPAC is also liable to it for contribution because CPAC's negligence made it jointly liable for Stalter's injuries. *See Thompson v. Burke Engineering Sales Co.,* 252 Iowa 146, 154, 106 N.W.2d 351, 356 (1960) (builder can be held liable for injuries to a third person if the danger to others was reasonably foreseeable). Iowa Power claims that CPAC negligently built the spur in 1970 under Iowa Power's lines creating inadequate clearance. The district court granted CPAC's motion for summary judgment on the issue of negligence, ruling that any duty that CPAC may have owed Stalter to assure that there was proper clearance between the spur and the power lines was superseded by Iowa Power's duty to safely maintain its power lines. *See Smith v. Shaffer,* 395 N.W.2d 853, 857 (Iowa 1986) (where an actor's conduct is a substantial factor in bringing about a plaintiff's harm but is superseded by later forces or conduct, the actor's conduct does not constitute the legal cause of a plaintiff's harm).

Iowa Power's duty to safely maintain its power lines is mandated by statute and includes overhead clearance requirements. *See* Iowa Code § 478.25; 199 Iowa Admin. Code 25.3(476,478) (1986). In addition, Iowa Power was required by law to annually inspect all electric lines operated at 34.5kV and above to assure that the lines were in compliance with state standards. *See* Iowa Code § 478.25; 199 Iowa Admin. Code 25.3(476,478) (1986). The line that injured Stalter was operated at 69kV and was, therefore, subject to annual inspections. Indeed, it is undisputed that Iowa Power performed annual inspections on the line that injured Stalter.

■ It is the exclusive function of the court to declare the existence or non-existence of rules, such as those pertaining to superseding causes, which restrict an actor's responsibility. Restatement (Second) of Torts § 453; *Hibma v. Odegaard,* 769 F.2d 1147, 1156 (7th Cir.1985). If the facts are undisputed, the court has the duty to apply to them the rules determining the existence or extent of the negligent actor's liability. Restatement (Second) of Torts § 453 comment b; *Hibma,* 769 F.2d at 1156. If, however, the negligent character of a third person's intervening act or the reasonable foreseeability of its being done is a factor in determining whether the intervening act relieves the actor from liability for his antecedent negligence, the question should be left to the jury. Restatement (Second) of Torts § 453 comment b; *Hibma,* 769 F.2d at 1156.

We cannot agree with the district court that Iowa Power's duty to Stalter superseded CPAC's duty to Stalter as a matter of law. Based on the record currently before us, genuine issues of fact exist as to whether CPAC's duty to Stalter had been superseded by Iowa Power's duty. Thus, CPAC's motion for summary judgment on this issue should have been overruled.

In reversing the district court's grant of summary judgment on the negligence issue, we express no opinion as to the validity of CPAC's other contentions raised for the first time on appeal.

■ IV. *Indemnification.* Iowa Power asserts that the district court erred in finding, as a matter of law, that CPAC had no duty to indemnify it for any judgment Stalters might recover against Iowa Power. Iowa Power contends that CPAC's duty to indemnify it arose from CPAC's breach of an independent duty owed to it by CPAC. Iowa Power claims that duty was breached when CPAC built the spur in 1970 under Iowa Power's transmission lines, thus, interfering with Iowa Power's alleged easement allowing it to have the lines there.

■ There is no evidence in this record, however, that Iowa Power possessed an easement for its power lines when the spur track was built. Iowa Power admits this fact and asserts that because there is no evidence that an easement existed when the spur track was built, we have to pre-

sume that a valid easement existed. We believe the contrary is true.

Iowa Rule of Civil Procedure 237 provides that when a motion for summary judgment is made and supported as provided by rule 237, an adverse party must set forth specific facts showing there is a genuine issue of fact for trial in order to avoid summary judgment. CPAC moved for summary judgment, arguing that it owed no duty to indemnify Iowa Power. As a part of that argument, CPAC relied on the absence of evidence in the record establishing that an easement to Iowa Power existed when CPAC built the spur. CPAC argued that if Iowa Power possessed no easement, it could not have interfered with Iowa Power's easement when it built the spur. Thus, CPAC argued it could not have breached a duty to Iowa Power when it built the spur.

To avoid summary judgment on this point, Iowa Power needed to set forth evidence of facts in the record establishing a genuine issue as to whether an easement for its power lines existed when the spur was built. The record does not reflect any such evidence of an easement when the spur was built. Without that evidence, Iowa Power has failed to establish, as a matter of law, that CPAC owed Iowa Power a duty of indemnity on that theory. Thus, summary judgment was proper.

The district court correctly granted CPAC summary judgment as to Iowa Power's indemnity claim.

V. *Disposition.* We agree with the district court that summary judgment was proper on Iowa Power's contribution claim based on premises liability and on Iowa Power's indemnity claim. We do hold, however, that summary judgment should not have been granted on Iowa Power's contribution claim based upon a negligence theory on the record and under the contentions presented to the district court.

We vacate the decision of the court of appeals and affirm in part and reverse in part the district court judgment and remand for further appropriate proceedings.

Appellate costs are taxed two-thirds to Iowa Power and one-third to CPAC.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.