[No. A102840. First Dist., Div. One. June 18, 2004.]

KEVIN D. LEWIS et al., Plaintiffs and Appellants, v.
CHEVRON U.S.A., INC., Defendant and Respondent.

**COUNSEL**

Law Offices of William L. Berg & Associates, Michael Edward Coke and A. Lee Sanders for Plaintiffs and Appellants.

Filice Brown Eassa & McLeod, Gennaro A. Filice III and Richard H. Poulson for Defendant and Respondent.

## OPINION

**MARCHIANO, P. J.—** ■  Kevin D. Lewis and his wife Joy Lewis appeal from a summary judgment in favor of Chevron U.S.A., Inc., in this personal injury action.[1] We conclude that absent concealment, a prior owner of real property is not liable for injuries caused by a defective condition on the property long after the owner has relinquished ownership and control, even if the prior owner negligently created the condition. We will affirm the judgment.

## BACKGROUND

Kevin Lewis was injured in April of 2000 when a hot water pipe burst while he was working for a subcontractor on an electrical job at the Berlex Biosciences laborsatory (Berlex) in Richmond. On April 5, 2001, Lewis and his wife filed a complaint alleging causes of action for general negligence, premises liability, products liability and loss of consortium arising out of his injuries. The original defendants were Berlex, the current owner of the property, and Lewis's foreman, Hank Ramirez.[2]

The complaint alleged that Kevin Lewis's employer contracted with Berlex to install or repair an electrical conduit on Berlex property. Lewis was working on the property when a copper water pipe burst, releasing steam that burned Lewis and caused him to fall to the ground and suffer additional injuries.

In October of 2002, plaintiffs substituted Chevron U.S.A., Inc. (Chevron) as a Doe defendant. Chevron had sold the laboratory property to Berlex in February of 1992, over eight years prior to Lewis's accident.

On December 30, 2002, Chevron filed a motion for summary judgment based on the fact that Chevron sold the laboratory property to Berlex in 1992 and since that time did not "own, lease, rent, maintain, manage, supervise, operate, possess and/or otherwise have control over the premises . . . where the incident occurred, on April 6, 2000."

Plaintiffs admitted these facts, but requested a continuance to allow discovery of "the extent to which Chevron created copper pipe assemblies, affixed those assemblies to its buildings and sold those assemblies to

---

[1] Chevron was erroneously sued as "Chevron Oil Company" and corrected the name in its answer. The parties thereafter referred to it by its correct name.

[2] Plaintiffs subsequently settled with Berlex and dismissed Ramirez.

the public." They also requested leave to file a second amended complaint to allege causes of action for negligence and strict products liability against Chevron based on the theory that Chevron's employees or hired contractors created the soldering defect in the copper pipe and affixed the pipe to the building prior to selling the building to Berlex. Plaintiffs submitted the deposition transcript of an expert stating that the cause of the rupture stemmed from a poorly soldered together pipe joint. Chevron opposed both requests, arguing that even if it had created the defect, a predecessor owner of real property is not liable to third parties injured by a defective condition on the property after the property is sold, citing *Preston v. Goldman* (1986) 42 Cal.3d 108 [227 Cal.Rptr. 817, 720 P.2d 476] (*Preston*) and *Lorenzen-Hughes v. MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684 [30 Cal.Rptr.2d 210] (*Lorenzen*).

The trial court denied plaintiffs' request for a continuance and granted the request to file a second amended complaint.[3] The court granted Chevron's motion, based on the holdings in *Preston* and *Lorenzen*. Judgment was entered in favor of Chevron. Plaintiffs moved for reconsideration, arguing for the first time that *Preston* does not apply in cases involving latent defects. The court denied reconsideration and plaintiffs appeal.

## DISCUSSION

Chevron's motion was properly granted, "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "We review the trial court's decision de novo, considering 'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.' " (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) "A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

---

[3] The request for a continuance was based on plaintiffs' contention that they needed discovery of Chevron's role as a manufacturer of copper pipe assemblies that it affixed to buildings that it sold for a profit. Plaintiffs assert no argument on appeal regarding their theory that Chevron was a manufacturer for purposes of the products liability cause of action, and we do not address that claim.

Plaintiffs and Chevron agree that the sole issue presented by this appeal is whether the holdings in *Preston* and *Lorenzen* establish that Chevron is not liable.

*The Undisputed Facts*

█ We first review the complaint, because the pleadings define the issues addressed in a summary judgment motion. (*Scott Co. v. United States Fidelity & Guaranty Ins. Co.* (2003) 107 Cal.App.4th 197, 213 [132 Cal.Rptr.2d 89].) The only other relevant matters are the separate statements of undisputed facts as supported by the declarations and other materials submitted in connection with the summary judgment motion and plaintiffs' opposition. (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 112 [113 Cal.Rptr.2d 90].)

The first and second causes of action, for negligence and premises liability, alleged that the defendants "negligently owned, leased, rented, maintained, managed, supervised and operated the premises where the incident occurred." Those causes of action also alleged that defendants "had actual and constructive notice of the defective condition of the water conduit, [and] failed to repair the defect and they failed to warn plaintiff of the danger caused by the defect." The third cause of action for products liability alleged that defendants knew that the conduit was defective when it left the control of each defendant and that plaintiff was a bystander user of the product. The products liability claim was based on theories of strict liability, negligence and breach of warranty.[4]

Chevron's motion for summary judgment was based on four stated facts. The first fact was that Chevron sold the laboratory property to Berlex in 1992. The second fact was that after the sale Chevron did not "own, lease, rent, maintain, manage, supervise, operate, possess and/or otherwise have control over the premises . . . where the incident occurred, on April 6, 2000." Plaintiffs admitted these facts. Two other facts supporting Chevron's motion were that the conduit referenced in the products liability cause of action was copper pipe and that Chevron never manufactured or sold copper pipe to the public. These facts were supported by declarations of a Chevron officer and a Chevron employee and deposition testimony regarding the copper pipe that burst and injured plaintiff.

---

[4] The second amended complaint added a second cause of action for negligence against Chevron, alleging that before it sold the property to Berlex in 1992, Chevron negligently caused the pipe to be installed on the property. The second amended complaint also alleged that Chevron knew or had reason to know that the pipe was defective and failed to notify Berlex of the condition of the pipe, which proximately caused the injuries to Lewis. These additional allegations make no difference in the resolution of this appeal.

In their opposition, plaintiffs, although purporting to dispute the latter two facts regarding Chevron's connection with copper pipe, were merely taking issue with the implications that could be drawn from the facts. As explained in their argument to the trial court, "[p]laintiffs do not contend that CHEVRON creates pieces of copper pipe for sale to the general public." They argued that Chevron was liable because it negligently soldered pieces of copper pipe, affixed them to the laboratory building and sold the defective building to Berlex. Plaintiffs argued that Chevron regularly sold real property to the public that contained such defective components. Plaintiffs did not submit any additional undisputed facts, but argued that they had information that Chevron or its contractors had installed the copper plumbing in the building prior to the sale to Berlex.

## The Liability of Predecessor Landowners Is Settled

The trial court concluded that *Preston* and *Lorenzen* established that Chevron was not liable for any harm caused by a dangerous condition on the land after its vendee took possession, unless Chevron had concealed a known dangerous condition. The court found that plaintiffs did not allege or offer evidence that Chevron knowingly concealed a dangerous condition. The court also rejected the theory that Chevron was in the regular business of manufacturing or selling copper piping for purposes of the products liability cause of action.[5]

On appeal, plaintiffs argue that *Preston* applies only to patent defects and that *Lorenzen* was wrongly decided. We conclude that the reasoning in *Preston* is not limited to its facts and that it supplies the appropriate rule for this case. Also, we agree with Chevron that *Lorenzen* accurately states the applicable law.

The *Preston* court stated the issue and its resolution clearly at the beginning of the opinion. "Should former owners, allegedly negligent in constructing an improvement on their property, be subject to liability for injuries sustained on that property long after they have relinquished all ownership and control? The Restatement Second of Torts proposes that liability is terminated upon termination of ownership and control except under specified exceptions, and we agree." (*Preston, supra,* 42 Cal.3d at p. 110.)

---

[5] Plaintiffs make no separate argument as to the loss of consortium claim, and it falls with the claim of Kevin Lewis. (See, e.g., *Brown v. Smith* (1997) 55 Cal.App.4th 767, 777, fn. 4 [64 Cal.Rptr.2d 301]; *Jablonski v. Royal Globe Ins. Co.* (1988) 204 Cal.App.3d 379, 388 [251 Cal.Rptr. 160].)

The Restatement Second of Torts, section 352 (section 352) reflects the general rule, as follows: "Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession." (Rest.2d Torts, § 352.) "The vendee is required to make his own inspection of the premises, and the vendor is not responsible to him for their defective condition, existing at the time of transfer. Still less is he liable to any third person who may come upon the land, even though such entry is in the right of the vendee." (Rest.2d Torts, § 352, com. a, p. 235.) This is the rule adopted by the court in *Preston*.

The facts of *Preston* demonstrate its application here. In 1972, the Kubichans designed and built a pond in their backyard. They sold the property, with the pond, to Goldman in 1973. Goldman entered into a lease-option agreement with the Reids in 1974 and the Reids took possession. The Reids put a new brick facing on the pond and bricked the patio around it. They had emptied the pond and were aware of its depth. In 1976, guests brought a 22-month old child to the house. The child fell into the pond and suffered permanent brain damage and quadriplegia. (*Preston, supra,* 42 Cal.3d at pp. 110–111 [227 Cal.Rptr. 817, 720 P.2d 476].) The victim's father brought an action against the Kubichans, Goldman and the Reids.

The Supreme Court rejected the lower court's conclusion that a vendor of land who negligently creates an unreasonably dangerous condition on his land is liable for subsequent injuries as the creator of the condition, rather than as owner of the property. (*Preston, supra,* 42 Cal.3d at pp. 112, 126–127.) The court adopted the rule of sections 352 and 353 of the Restatement Second of Torts. The court explained as follows: "After consideration of the relevant variables reviewed above, we have concluded that we should not depart from the existing rules restricting liability of predecessor landowners. Our recent emphasis on the importance of possession and control as a basis for liability comports with our conclusion, as does our analysis of the factors enunciated in *Rowland v. Christian* [1968] 69 Cal.2d [108], 112–113 [70 Cal.Rptr. 97, 443 P.2d 561]. The injury here was in a strict sense foreseeable, but at the time the Kubichans built the pool for their own use the prospect that a future landowner who would allow children on the premises would not take appropriate precautions was a tenuous proposition. Unquestionably, plaintiff suffered injury. The closeness of the defendants' conduct and plaintiff's injuries, is, as mentioned in regard to foreseeability, not very great. The Kubichans had no control over the backyard or of access to it at the time the

injury occurred; nor could they affect the degree of supervision exercised over persons on the premises. They played no direct role in the circumstances of this particular accident, nor would they have been able at the time to take additional precautions to prevent its occurrence. Moreover, as to moral blame, such a concept is difficult to apply to anyone involved in this case. Arguably, however, the greater 'blame' should be placed on those in present control of the circumstances who have the power to make changes, take needed precautions, and control the entry of persons on the land." (*Preston, supra,* at p. 125.)

The same concerns apply in this case. Chevron had no ability to inspect the pipe, test it, or to warn workers coming on the property about the water pipe. Chevron could not obtain insurance for property it did not own, or take precautions to prevent injuries after it had given up ownership and the ability to control the property.

Plaintiffs here argue that the defective connection of the copper pipes that resulted in Kevin Lewis's injury was a latent defect, and is therefore not governed by the nonliability rule of *Preston.* Plaintiffs decline to suggest what rule should govern in the case of a latent defect, but the answer is found in the reasoning of *Preston* and *Lorenzen.*

Plaintiffs are correct that *Preston* involved a patent defect as a matter of law. But that distinction makes no difference in the outcome of this case. The *Preston* court explained that a patent defect is one that can be " '[d]iscovered by such an inspection as would be made in the exercise of ordinary care and prudence. . . .' " (*Preston, supra,* 42 Cal.3d at p. 123.) In contrast, a latent defect is " 'one which is hidden and which would not be discovered by a reasonably careful inspection.' . . ." (*Ibid.,* citations omitted.) The court was discussing this distinction in the context of the applicable statutes of limitation. To the extent the patent nature of the defect had a bearing on the court's decision, it was reflected in the court's comment that: "Even under the most expansive theories of liability, one could argue that the Kubichans' responsibility terminated by the time the accident here took place. Their successors obviously had knowledge of and time to correct any deficiencies which might have existed and which were easily discoverable." (*Id.* at p. 123, fn. 7.) The patent, or obvious nature of the defect meant that there was no duty to disclose it to the buyer. (*Wylie v. Gresch* (1987) 191 Cal.App.3d 412, 424 [236 Cal.Rptr. 552].)

But the *Preston* court did not adopt "the most expansive theories of liability," it adopted the Restatement rules. (*Preston, supra,* 42 Cal.3d at pp. 110, 123, fn. 7.) The Restatement provides for no liability unless a seller knows of a hidden defect and conceals it. The court in *Lorenzen, supra,* 24 Cal.App.4th 1684, addressed the appropriate rule in the case of a latent defect, and held: "the transferor of an interest in real property is not liable for latent defects in the property which the transferor did not know about, and had no reason to believe existed." (*Lorenzen, supra,* at p. 1685.) The injury in *Lorenzen* occurred when a cabinet fell from the wall and injured plaintiff who was working at her desk. The cabinet had been installed 11 years earlier by a contractor working for a prior tenant. Since that time the tenant transferred its assets and the lease to plaintiff's employer. (*Lorenzen, supra,* at p. 1686.)

The *Lorenzen* court explained that *Preston* did not exclude latent defects from its holding and that once the previous tenant showed the absence of ownership or control, the burden shifted to the plaintiff to show an exception to the general rule of nonliability.[6] In the absence of any showing that the transferor knew of the condition and deliberately concealed it, the court affirmed summary judgment in favor of the defendant. As is the case here, the plaintiff in *Lorenzen* admitted, " 'no one could have known that [the cabinet had not been properly attached to the wall], until the cabinet fell.' " (*Lorenzen, supra,* 24 Cal.App.4th at p. 1689, italics omitted.) This admission eliminated the exception to the general rule as a potential theory of recovery. The result and rationale in *Lorenzen* is fatal to plaintiffs' claims that the rule of *Preston* applies only to patent defects.

To counter the impact of *Lorenzen*, plaintiffs argue that the court's discussion of liability was dicta because the plaintiff there had failed to file a separate statement of undisputed facts in opposition to the defendant's motion for summary judgment. Plaintiffs argue that the *Lorenzen* court could have affirmed the summary judgment on that procedural ground and not reached the issue of liability. But the *Lorenzen* court noted the lack of a factual dispute as the basis for summary judgment on the pure question of law. (*Lorenzen, supra,* 24 Cal.App.4th at p. 1686.) The absence of disputed facts does not detract from the reasoning in *Lorenzen*.

---

[6] *Lorenzen* noted the two exceptions to the general rule concerned "cases which involve true commercial developers, or which meet all the requirements of the Restatement Second of Torts section 353." (*Lorenzen, supra,* 24 Cal.App.4th at p. 1688.)

As explained by Professors Prosser and Keeton, "the ancient doctrine of *caveat emptor* has lingered on to a very large extent" in judicial consideration of the responsibility of a vendor of land. (Prosser & Keeton, Torts (5th ed. 1984) § 64, p. 447; see also 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 959, pp. 343–344.) The only potentially applicable exception regarding injuries to persons on the land "is that the vendor is under a duty to disclose to the vendee any hidden defects which he knows or should know may present an unreasonable risk of harm to persons on the premises, and which he may anticipate that the vendee will not discover." (Prosser & Keeton, *supra,* § 64, p. 447, fns. omitted.)

This statement of the law is reflected in section 353 of the Restatement Second of Torts (section 353). That section states in part: "(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if (a) the vendee does not know or have reason to know of the condition or the risk involved, and (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk." (*Ibid.*)

Contrary to plaintiffs' argument that section 353 only applies to patent defects, the section's language makes it clear that it applies equally to hidden defects, unknown to the vendee and concealed by the seller. (6 Witkin, *supra,* § 959, p. 344.) Section 353 focuses on the seller's knowledge of the risk and realization to act on that knowledge in assessing liability. Latent and patent are definitional labels applied to construction defects[7] and do not define the liability of a seller under sections 352 and 353.

Chevron's uncontested showing in support of its motion for summary judgment brought it within the general rule articulated in *Preston.* In its motion, Chevron established that it sold the property to Berlex in 1992 and did not "own, lease, rent, maintain, manage, supervise, operate, possess and/or otherwise have control over the premises" at after the sale. Plaintiffs admitted these facts and failed to present any facts indicating that Chevron knew or should have known of the defect. In their brief on appeal, plaintiffs make it plain that they are not arguing that Chevron had knowledge of the

---

[7] See Code of Civil Procedure sections 337.1, subdivision (e) and 337.15, subdivision (b).

defect in the pipe, as they stress that no one could have known of the existence of the defective connection concealed inside the joint of the copper pipe. The concession of this fact rules out application of the exception to the general rule.

■     Absent any factual basis to support the applicability of the exception, the general rule of nonliability applies. Like the plaintiffs in *Lorenzen*, plaintiffs failed to present any basis for Chevron's liability.

## CONCLUSION

The summary judgment is affirmed.

Stein, J., and Swager, J., concurred.