Filed 2/26/21  Rickley v. Gulf Oil Corp. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| REBECCA RICKLEY et al., | B301173 |
| Cross-complainants and Appellants, | (Los Angeles County Super. Ct. No. BC656002) |
| v. | |
| GULF OIL CORPORATION, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ruth Ann Kwan, Judge.  Affirmed.

Law Offices of Natasha Roit and Natasha Roit for Cross-complainants and Appellants.

Sheppard, Mullin, Richter and Hampton, Sean P. O'Connor, Karin Dougan Vogel and Abby H. Meyer for Cross-defendant and Respondent.

_____

Rebecca Rickley and Natasha Roit (Appellants) appeal from a judgment in favor of respondent Gulf Oil Corporation (Gulf) following its successful motion for summary adjudication.[1] Appellants' residence is located up a hill behind a service station (Station) on the Pacific Coast Highway in Malibu. Gulf previously owned the Station, but sold it in 1982 to Thrifty Oil Co. (Thrifty), its current owner. Since 1967, there has been a recorded easement for a sewage pipe (the Sewer Pipe) running from the Station up the hill through Appellants' property to a sewer main on Appellants' street.

In 2016 the Station's current lessee, Tesoro Refining & Marketing Company, LLC (Tesoro), reopened the Station after a 17-year closure and remediation of the hillside. The remediation included replacement of the portion of the Sewer Pipe located on Thrifty's property. After the sewage line was reconnected, sewage spilled onto Appellants' property.

Appellants sued the contractor that handled the remediation along with Thrifty, Tesoro, Atlantic Richfield Company (ARCO, a prior lessee), Gulf and others. Appellants asserted claims against Gulf for negligence, nuisance, and trespass.

The trial court granted summary adjudication in favor of Gulf on each of those claims. The court relied upon the rule adopted by our Supreme Court in *Preston v. Goldman* (1986) 42 Cal.3d 108 (*Preston*) that former owners of property are generally

---

[1] Gulf is now part of Chevron U.S.A., Inc. The trial court's order resolved each of the claims involving Gulf, and the judgment in Gulf's favor is therefore final and appealable. (*Justus v. Atchison* (1977) 19 Cal.3d 564, 568.)

not liable for dangerous conditions on their former property after they have relinquished ownership and control.  (See *id.* at p. 110.)

We affirm.  The trial court correctly applied the holding in *Preston* to Appellants' negligence claim.  Appellants also failed to provide evidence sufficient to show any causal connection between any conduct by Gulf during the time it owned the Station and the sewage spill 34 years later.  And the statute of limitations long ago ran on Appellants' claim that Gulf trespassed on Appellants' property by installing the Sewer Pipe outside the scope of the easement.

## BACKGROUND

### 1.  Gulf's Installation and Subsequent Sale of the Sewer Pipe and Easement

Appellants' property is located on a hill behind the Station.  Appellants purchased their property in 1997.

In 1967 Gulf obtained and recorded an easement for a sewer line on the property that Appellants now own (the Easement).  Gulf installed the Sewer Pipe and used it in the operation of the Station.

The Sewer Pipe included an above-ground segment on the property where the Station is located and another segment that ran up the hill under the property that now belongs to Appellants.

Gulf sold the Station to Thrifty in 1982, along with the Sewer Pipe and the Easement.  In connection with the sale, Gulf disclosed to Thrifty "potential slope stability issues" affecting the hillside where the Sewer Pipe was located.

### 2.  The 2016 Sewage Spill

Thrifty operated the Station from 1982 to 1997.  During that time, Thrifty received no complaints about sewage spills.  In

3

1997 Thrifty leased the Station to ARCO. ARCO operated the Station for two more years until 1999, when it closed the Station due to ARCO's perception that the instability of the hillside posed a risk.

In 2013 Tesoro became the lessee. Tesoro decided to reopen the Station and hired RD Builders, Inc. (RD Builders) as the contractor responsible for renovating the Station prior to the reopening. The renovation included replacing the segment of the Sewer Pipe on the property where the Station was located and reconnecting the replaced segment to the pipe on Appellants' property.

At the time it reconnected the Sewer Pipe, RD Builders did not know the condition of the segment of the pipe running under Appellants' property. It also did not check to see if the Sewer Pipe was actually connected to the sewer main on the other side of Appellants' property where it understood the Sewer Pipe terminated.

The Station reopened in August 2016. In October 2016 Appellants discovered that sewage was discharging onto their property. They found an open pipe on their property from which the sewage was spilling. Appellants informed Thrifty. Tesoro representatives subsequently inspected the site and observed an open pipe that was discharging sewage.

3.     **Proceedings in the Trial Court**

Appellants filed their initial cross-complaint in 2017 and their operative third amended cross-complaint (Complaint) in 2018. The Complaint alleged causes of action against Gulf for trespass, nuisance, and negligence.

Gulf filed a motion for summary adjudication attacking all three claims. The trial court granted the motion.

4

The court concluded that, under the holding in *Preston*, Gulf's liability for negligence ended with its sale of the Station to Thrifty. The court concluded that Appellants' nuisance and trespass claims failed for the same reason. The court also found that Appellants' trespass claim was barred by the statute of limitations.

## DISCUSSION

### 1. Standard of Review

We apply a de novo standard of review to the trial court's summary adjudication ruling. We interpret the evidence in the light most favorable to Appellants as the nonmoving parties and resolve all doubts about the propriety of granting the motion in their favor. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.) We consider all the evidence before the trial court except that to which objections were made and properly sustained. (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451–1452.) Although we independently review Gulf's motion, Appellants have the responsibility to demonstrate that the trial court's ruling was erroneous. (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 372.)

In exercising our independent review, we apply the standards applicable to summary judgment motions. A cross-defendant moving for summary judgment has an initial burden of production to make a prima facie showing that there are no triable issues of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 (*Aguilar*).) Once the moving party does so, the burden of production shifts to the opposing party to show the existence of material disputed facts. (*Aguilar*, at pp. 850–851.) The opposing party must make that showing with admissible evidence. (Code

5

Civ. Proc., § 437c, subd. (d); *Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 846.)

## 2.    Gulf Is Not Liable for Harm that Occurred 34 Years After It Sold the Station

The trial court correctly recognized that Appellants' negligence cause of action against Gulf is precluded by our Supreme Court's holding in *Preston.*

In *Preston,* the court addressed the question whether "former owners, allegedly negligent in constructing an improvement on their property, [should] be subject to liability for injuries sustained on that property long after they have relinquished all ownership and control." (*Preston, supra,* 42 Cal.3d at p. 110.)  Relying on the Restatement Second of Torts (Restatement), the court adopted the rule that "liability is terminated upon termination of ownership and control except under specified exceptions." (*Ibid.*)  Based on that rule, the court affirmed a judgment in favor of the defendants, who had built a backyard fountain in which a child was later injured after the defendants had sold their property.  (*Id.* at pp. 110–111, 126.)

The court based its holding on several factors, the most significant of which is a former owner's inability to control the condition or use of the property after it is sold.  The court emphasized the "major importance of the existence of possession and control as a basis for tortious liability for conditions on the land" in its prior opinions.  (See *Preston, supra,* 42 Cal.3d at pp. 118–119, citing *Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358 (*Sprecher*).)  The court explained that " '[modern] cases recognize that . . . the duty to take affirmative action for the protection of individuals coming on the land *is grounded in the possession of the premises and the attendant right to control and*

6

*manage the premises.'* " (*Preston,* at p. 118, quoting *Sprecher*, at p. 368.)  The court also reasoned that a defendant's insurance would not typically cover an accident occurring on property that the defendant no longer owned or rented.  (*Preston,* at pp. 119–121.)

The court rejected the argument that a former landowner should have greater liability if he or she actually created the condition that causes injury.  The court explained that its prior decision in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*) "represented a major departure from the rigid classification of negligence as active or passive, and the assignment of risk based upon such classifications as well as upon the status of the person injured due to conditions existing on real property." (*Preston, supra,* 42 Cal.3d at p. 118.)  Rather, the decision whether a former landowner owes a duty of care to a person injured by conditions on the property depends upon the factors described in *Rowland*, including " 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of  insurance for the risk involved.' " (*Preston,* at p. 118, quoting *Rowland,* at pp. 112–113.)  After weighing all these factors, the court concluded that "primary importance in ascribing liability here must be placed upon ownership and control of property."  (*Preston,* at p. 126.)

Thus, consistent with this analysis, the limitation on former landowner liability adopted in *Preston* applies even if a prior landowner negligently created the dangerous condition that later injures a third party.  (See *Preston, supra,* 42 Cal.3d at p. 117; *Lewis v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 690, 696 (*Lewis*).)  The limitation applies to both patent and latent defects in property, so long as the prior owner did not conceal or fail to disclose a risk that the prior owner knew or should have known existed.  (*Lewis,* at p. 699, quoting Rest.2d Torts, § 353.)

### a.    *Exceptions to the* Preston *rule*

Appellants argue that the *Preston* rule does not apply here because *Preston* concerned an injury to a person *on* the property, and recognized an exception for injuries to "those outside of the predecessor owner premises."  Appellants point out that the 2016 sewage spill damaged their property, not Thrifty's, and argue that sellers should not be able to avoid responsibility for damage that they cause to the property of others by selling their property.  We reject the argument for several reasons.

First, our Supreme Court did not actually adopt such an exception in *Preston*.  Rather, the court simply mentioned the exception as one historical approach to predecessor owner liability while discussing the "somewhat murky" development of the law in that area.  (See *Preston, supra,* 42 Cal.3d. at pp. 114–115.)

Second, the rationale for the court's decision in *Preston* suggests that the rule limiting the liability of former owners does not depend on where a plaintiff's injury occurs.  Rather, the issue of "primary importance" is the "ownership and control of property."  (*Preston, supra,* 42 Cal.3d at p. 126.)  A former owner who no longer controls the property that causes an injury is not

8

in a position to prevent that injury, whether it occurs on the property or outside of it.[2]

Third, even if it applies, the exception for injuries that occur outside the property would not affect the outcome here. In discussing the origin of the exception, the court in *Preston* cited Prosser & Keaton's observation that " 'it seems obvious that there must be some time limit upon the duration of the potential liability . . . . The emerging view is that the vendor is no longer liable once the vendee has had a reasonable time to discover and remedy the condition, unless the vendor has actively concealed it.' " (*Preston, supra,* 42 Cal.3d at p. 115, quoting Prosser & Keaton on Torts (5th ed. 1984) § 64 at p. 448.)

The Restatement includes a more detailed discussion of the time limitations on a former owner's potential liability for damage occurring outside his or her former property. Section 373 of the Restatement addresses the liability of a "vendor of land who has created or negligently permitted to remain on the land a structure or other artificial condition which involves an

---

[2] The *current* owner of property might have greater control over the conditions leading to harm on the property than to harm outside the property because the current owner can control access to the property and "the degree of supervision exercised over persons on the premises." (See *Preston, supra,* 42 Cal.3d at p. 125.) But that does not change the fact that a former owner without any ongoing rights to the property does not have the ability to control *any* of the conditions leading to harm, wherever that harm occurs.

9

unreasonable risk of harm to others outside of the land."[3]  The section provides that, if the vendor created the condition or actively concealed it from the vendee, the vendor remains liable until the vendee "discovers it and has reasonable opportunity to take effective precautions against it."  Otherwise, the vendor's liability continues only until "the vendee has had reasonable opportunity to discover the condition and to take such precautions."  (Rest.2d Torts, § 373, subd. (2).)

Consistent with this standard, the court in *Preston* observed that "[e]ven under the most expansive theories of liability," any dangerous conditions that a vendee is aware of and has time to remedy cannot form the basis for liability against a former owner.  (See *Preston, supra,* 42 Cal.3d at p. 123, fn. 7 [noting that the purchasers of the property in that case "obviously had knowledge of and time to correct any deficiencies which might have existed and which were easily discoverable"].)

As discussed below, the undisputed facts show that Gulf disclosed, and consequently Thrifty actually discovered, that the slope on which the Sewer Pipe was located was unstable at the time Gulf sold the Station.  That is the only allegedly dangerous condition affecting the pipe during Gulf's ownership that

---

[3] The court in *Preston* did not cite this section of the Restatement.  It had no reason to, as the injury at issue in that case occurred *on* the property that formerly belonged to the defendant.  However, the court expressly based its rule limiting former landowner liability on the Restatement standard.  Thus, even if the opinion in *Preston* could be read to include an exception for injuries occurring outside the former owner's property, there is no reason to believe that the court intended that exception to be broader than the Restatement defines it.

Appellants identified and supported with any evidence. Gulf's liability for negligence as a former owner therefore terminated with the sale of the Station.

### b. *Application of the rule*

Appellants first argue that Gulf is precluded from relying on the *Preston* rule because the analysis in *Preston* concerns a former landowner's *duty* and Gulf represented below that it did not contest the duty element of Appellants' negligence claim. Gulf stated in its summary adjudication motion that it " 'does not contest duty of care.' " Gulf said that it instead sought summary adjudication "on the grounds that [Appellants] cannot establish causation and liability."

Gulf apparently made this representation on the belief that *Preston* addressed the element of causation or some other limitation on liability rather than duty of care. The belief is understandable but mistaken. The court in *Preston* did not specifically link the rule of law that it established to the element of duty in a negligence claim. However, its discussion of the factors affecting the existence of a duty of care as described in *Rowland* certainly suggests that the court's holding was based at least in part on a duty analysis.

In any event, whether the holding in *Preston* was based on the element of duty or causation or some other factor, Gulf is not making a new argument on appeal. Gulf clearly cited and relied on *Preston* in seeking summary adjudication in the trial court. The trial court also relied on that decision in its ruling. Thus, neither Appellants nor the trial court were misled by Gulf's disclaimer. (Cf. *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [opposing party should not be required to defend against a new

11

theory for the first time on appeal].)  Gulf therefore did not forfeit the right to rely on the rule established in *Preston* in this appeal.

Gulf made a prima facie showing that the *Preston* rule bars Appellant's negligence claim.  A plaintiff asserting a negligence claim must prove both a duty of care and causation. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 837; *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 ["In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages"].)  Thus, whether the analysis in *Preston* is based on the element of duty or causation, absent proof of an exception to the *Preston* rule Appellants are unable to establish their claim.

Gulf provided evidence that:  (1) it sold the Station to Thrifty in 1982, including the Easement and the Sewer Pipe; (2) Gulf did not have possession or control over the Station after the sale; and (3) the sewage spill occurred in 2016, 34 years after the sale.  Gulf therefore provided evidence sufficient to show that it was a former landowner without any control over the property when the sewage spill occurred in 2016.  That was sufficient to shift the burden to Appellants to provide evidence establishing some exception to the *Preston* rule.  (See Code Civ. Proc., § 437c, subd. (p)(2); *Lorenzen-Hughes v. MacElhenny* (1994) 24 Cal.App.4th 1684, 1688 [former tenant's showing that it had no possession or control of the property at the time of an accident negated an essential element of the plaintiff's negligence cause of action, shifting the burden on summary judgment to the defendant]; *Lewis, supra,* 119 Cal.App.4th at p. 698.)

Gulf actually went further in support of its motion, making a prima facie showing that Thrifty was aware of the only potentially dangerous condition affecting the Sewer Pipe that

12

existed when Thrifty purchased the Station. Gulf provided evidence that the Sewer Pipe itself was not defective at the time of the sale. Gulf's evidence showed that the Sewer Pipe was functioning at the time it sold the Station and that it operated without incident for 17 years after the sale.

Barry Berkett was involved in Thrifty's purchase of the Station and testified as Thrifty's "Person Most Knowledgeable." He testified that the Sewer Pipe was operational when Thrifty purchased the Station in 1982, and that Thrifty operated the Station from 1982 to 1997 without receiving any complaints about sewage leaks. Berkett was not aware of any failures of the Sewer Pipe before the 2016 spill. Roit also testified at her deposition that she did not smell any sewage on her property before 2016, which included two years that the Station was in operation from 1997 to 1999 after Appellants had purchased their property.

Thus, the only potential " 'unreasonable risk' " affecting the Sewer Pipe in 1982 was the instability of the slope on which the Sewer Pipe was installed. (See *Preston, supra,* 42 Cal.3d at p. 113, fn. 2, quoting Rest.2d Torts, § 353.) Berkett testified that he was aware of that risk. He explained that the Station was on "higher alert" than other service stations that Thrifty operated because of "potential issues with respect to the slope stability." Berkett testified that he had concerns about potential slope stability at the time Thrifty purchased the Station based upon his review of Gulf's real estate files. Berkett explained that, "from the time that we acquired the property from Gulf, there were reports in their files and subsequently our files, and there were a variety of issues with respect to the hillside, including, you know,

13

small rocks, runoff, similar issues that came up with respect to this property."

In their opposition to Gulf's motion, Appellants did not dispute that Gulf sold the Station to Thrifty in 1982 and surrendered possession and control at that time.[4]  Neither do they dispute that fact on appeal.  Rather, they argue that Gulf was aware of particular problems concerning the hillside and the Sewer Pipe that it did not disclose to Thrifty.

That argument misses the mark.  Under the section of the Restatement that our Supreme Court cited with approval in *Preston,* even if Gulf actively concealed a condition creating unreasonable risk, Gulf would remain liable only until Thrifty discovered the condition and had a " 'reasonable opportunity to take effective precautions against it.' "  (See *Preston, supra,* 42 Cal.3d at p. 113, fn. 2, quoting Rest.2d Torts, § 353, subd. (2).)  Section 373 of the Restatement, which applies to a condition causing injury outside the land, similarly provides that a vendor who creates or actively conceals a dangerous condition remains liable only until the vendee discovers the condition "and has

---

[4] Appellants disputed whether the sale included the Easement and the Sewer Pipe on the grounds that Gulf did not establish the "validity of the easement" and "there is no evidence as to the existence or condition of the sewer pipe at the time of sale."  However, as the trial court noted, the recorded deed from Gulf to Thrifty showed that the Easement was included in the sale.  Appellants do not dispute this finding on appeal, and do not argue that Gulf retained the Easement after selling the Station.  Appellants also did not provide any evidence contesting that Gulf actually installed the Sewer Line.

14

reasonable opportunity to take effective precautions against it." (Rest.2d Torts, § 373, subd. (2).)

Appellants did not provide any evidence disputing Berkett's testimony that Thrifty was aware of slope stability issues when it purchased the Station.[5] Clearly, Thrifty had a reasonable opportunity to take precautions against that condition in the 34 years that it owned the Station before the sewage spill.

Nor did Appellants provide any evidence creating a disputed issue of fact concerning any other unreasonably risky condition. Appellants did not identify any evidence showing that the Sewer Line had a leak or any other malfunction at the time of sale.[6] Appellants cite handwritten notes from 1979 identifying a

---

[5] Although Gulf did not identify it as an item of evidence in connection with its motion, Appellants' Complaint itself established Thrifty's knowledge. In their Complaint, Appellants alleged that ARCO and Thrifty "knew, at least since March 1997, that the hillside behind the . . . Station, and on which hillside [Appellants'] Property was sited, was collapsing." The Complaint quoted a specific report that Thrifty allegedly received in 1997 stating that " '[t]he slope is eroding and does not appear to have been maintained.' " With respect to the Sewer Pipe itself, the report allegedly stated that the pipe " 'has had little or no visible maintenance in 30 years. Some pipe sections are very rusty. Further, pipe anchors are non existent or are no longer effective.' " Unequivocal allegations in a complaint are judicial admissions that may not be contradicted in opposing summary judgment. (*Mark Tanner Constr. v. Hub Internat. Ins. Servs.* (2014) 224 Cal.App.4th 574, 586–587.)

[6] Indeed, as mentioned, Appellants actually represented in their response to Gulf's separate statement of undisputed facts that "there is no evidence as to the . . . condition of the sewer pipe at the time of sale."

leak in the sewer line. However, as the trial court pointed out, the leak that the note identified was not actually on the property that Appellants later purchased, and the note itself directed that the leak be repaired. Thus, there was no evidence to suggest that this leak existed at the time of the sale, much less that it had any connection to the sewage spill 34 years later.

At oral argument, Appellants suggested a different nondisclosure theory. As discussed further below, it was undisputed that Appellants removed a portion of the Sewer Pipe prior to the 2016 spill as part of some remediation work following a dispute with their neighbor. Appellants claim that the portion of the pipe they removed was actually on their neighbor's property. Appellants argue that, if the missing portion of the pipe was actually the cause of the leak, Gulf is responsible for the damage under *Preston* because it failed to disclose to Thrifty that a portion of the Sewer Pipe was installed outside the scope of the Easement on the neighbor's property.

Even if true, Gulf's failure to disclose to Thrifty that a portion of the Sewer Pipe was located on a neighbor's property would not meet the criteria for the concealment exception. Both the jury instruction that the court approved in *Preston* and the Restatement section on which it was based explained that the exception concerns the concealment of a "dangerous condition" that actually *causes* the harm. (See *Preston, supra,* 42 Cal.3d at p. 113, fns. 1 & 2.)[7] The location of a portion of the Sewer Pipe on

___

[7] The jury instruction referred to the "general rule of law" that a seller of land is not subject to liability for injuries "which were *caused by* any dangerous condition" unless the seller "conceals or fails to disclose to his buyer *such dangerous*

16

the neighbor's property was neither a "dangerous condition" nor a cause of the 2016 sewage spill.  The location of the pipe outside the property on which the Easement existed might have supported some claim by the neighbor, but it did not make the pipe itself less functional.  And the location of the pipe did not cause the spill; its *removal* did (assuming that the missing portion of pipe was in fact the reason for the spill).[8]

The trial court therefore properly granted summary adjudication against Appellants on their negligence claim.

## 3. Appellants Failed to Support a Separate Claim for Nuisance

The trial court concluded that because Appellants' nuisance claim is based on the same alleged facts as their negligence claim, Appellants failed to state a separate claim for nuisance.  We agree.

In *El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337 (*El Escorial*) the court held that a nuisance claim for toxic mold contamination could not exist separate from the plaintiff's negligence claim.  (*Id.* at p. 1348.)  The court explained that the definition of nuisance is "so broad that it could

---

*condition.*"  (See *Preston, supra,* 42 Cal.3d at p. 113, fn. 1, italics added.)  Restatement section 353 provides that a vendor "who conceals or fails to disclose to his vendee any condition . . . which involves unreasonable risk" remains liable "for physical harm *caused by the condition.*"  (Rest.2d Torts, § 353, subd. (1), italics added.)

[8] Of course, if Appellants' removal of the pipe was in fact the cause of the spill, Gulf's alleged concealment of slope instability or some other problem with the pipe that had no role in the spill would be irrelevant.

17

be ' "applied indiscriminately to everything." ' " (*Id.* at p. 1348, quoting *City of San Diego v. U.S. Gypsum Co.* (1995) 30 Cal.App.4th 575, 585.)  Permitting traditional torts to be litigated as nuisance claims "would allow nuisance to ' "become a monster that would devour in one gulp the entire law of tort." ' " (*El Escorial,* at p. 1348, quoting *City of San Diego,* at p. 586.)

In *El Escorial*, the "factual allegations incorporated into the nuisance cause of action involved negligence and defective workmanship."  The court concluded that, "[w]here negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim." (*El Escorial, supra,* 154 Cal.App.4th at p. 1349; see *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542–543 (*Melton*) [nuisance claim failed with negligence claim where the nuisance claim relied on the same facts].)

Similarly, here, Appellants' nuisance claim relies on the same alleged conduct as their negligence claim, including Gulf's alleged failure to maintain the Sewer Pipe.  The importance of preventing the broad label of "nuisance" from swallowing the elements of a negligence claim is particularly pronounced here, where Appellants argue that, in contrast to a negligence claim, liability for nuisance does not depend on the defendant's ability to control the property creating the nuisance.  (See *Melton*, *supra,* 183 Cal.App.4th at p. 542.)  A plaintiff bringing a claim against a former landowner should not be able to avoid the limitation on such a claim that our Supreme Court carefully constructed in *Preston* simply by relabeling a negligence claim as a claim for nuisance.

Gulf also argues as an alternative ground for affirmance that Appellants failed to provide evidence showing a causal link

between any conduct by Gulf and the 2016 sewage spill. That argument provides a separate ground for summary adjudication in favor of Gulf on Appellants' nuisance claim.

Gulf presented undisputed evidence of several possible causes of the spill that had nothing to do with Gulf's conduct. As mentioned, Appellants admitted that they removed a portion of the Sewer Pipe before the 2016 spill as a result of a dispute with a neighbor. And, as Appellants themselves alleged, before putting the renovated Sewer Pipe back into operation after 17 years, Tesoro did not confirm that the pipe was connected to the sewer main or check the condition of the pipe running underneath Appellants' property.

In response to this prima facie showing on causation, Appellants did not provide any evidence that Gulf was responsible in any way for the sewage spill. As discussed above, Appellants did not provide evidence showing that the Sewage Pipe was actually damaged at the time Gulf sold the Station. Nor could they show that Gulf was responsible for anything that might have damaged the pipe after the sale, as Gulf no longer had any control over the pipe or the slope on which it was located.

Indeed, Appellants did not show that *any* damage to the Sewer Pipe on its property actually caused the spill. Consistent with allegations in their Complaint, Appellants argued that, after RD Builders replaced the portion of the Sewer Pipe on Thrifty's property, it reconnected that pipe to an old *irrigation* pipe on Appellants' property. Appellants alleged in their Complaint that RD Builders intentionally reconnected the downslope Sewer Pipe with a pipe that RD Builders "knew could not be the 'easement' pipe" to avoid the need to contact Appellants before reopening the Station.

With respect to Gulf's alleged responsibility for this alleged conduct, in response to Gulf's motion Appellants offered only the speculation that Gulf might have "contributed to the 2016 connection of the sewer pipe on Thrifty property to the irrigation pipe on the Rickley Property because the sewer pipe in that area was gone or severed due to land movement of which Gulf knew but did not attend to during its ownership." Putting aside whether such a tangential connection to the sewage spill could be sufficient to establish causation, Appellants offered no evidence to support it.

To prove a nuisance, a plaintiff must establish causation. (See *San Diego Gas & Electric Co. v. San Diego Regional Water Quality Control Bd.* (2019) 36 Cal.App.5th 427, 436; *Melton, supra,* 183 Cal.App.4th at p. 542.) Appellants failed to provide evidence sufficient to establish that any conduct by Gulf was a substantial factor in the sewage spill. Summary adjudication on Appellants' nuisance claim was therefore proper even if that claim existed separate from Appellants' negligence claim.

4. **Appellants Failed to Provide Evidence Sufficient to Support Their Trespass Claim**

A claim for trespass requires proof both that the defendant entered the plaintiff's property without permission and that the defendant's conduct was a substantial factor in causing harm. (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 262.) Appellants failed to provide evidence that Gulf's conduct caused any actionable trespass.

Appellants claim that Gulf trespassed on their property both because of the 2016 sewage spill and because Gulf originally installed a portion of the Sewer Pipe on Appellants' property outside the scope of the Easement. With respect to the first

theory, Appellants failed to provide evidence of causation for the same reasons that they failed to show that any conduct by Gulf caused a nuisance.

Appellants' second theory is barred by the statute of limitations. In support of its motion, Gulf provided evidence that it installed the Sewer Pipe pursuant to permits for that purpose after obtaining the Easement. The Sewer Pipe was installed by the time Gulf sold the Station in 1982. The statute of limitations had therefore run by the time that Appellants filed their initial cross-complaint in 2017.

Appellants argue that the alleged trespass was continuing and that they did not discover the trespass until 2016 when the sewage spill occurred. The first argument is legally incorrect, and the second argument is irrelevant.

The trespass that Appellants allege was the permanent installation of the Sewer Pipe in the wrong location. They do not allege any repeated or continuing intrusion onto their property, such as an ongoing leak or progressive contamination. The alleged trespass was therefore complete, and any harm from that trespass had occurred, when the Sewer Pipe was installed. (See *Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 233–234 [sewer line was permanent and the statute of limitations for trespass therefore began to run when the line was installed]; *CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1535 (*Hunter*) [once a permanent trespass is complete, an owner "must bring its claim to court within the statutory period or the claim will be barred *for that and all subsequent owners*"].)

Appellants' argument that they did not discover the trespass until the sewage leak occurred is not sufficient to save their cause of action under the "discovery rule." The discovery

21

rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.) The discovery rule is an exception to the statute of limitations that a plaintiff has the burden to prove. (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437.)

Appellants failed to meet their burden to provide evidence establishing that the discovery rule applied in responding to Gulf's summary adjudication motion. Appellants only provided evidence concerning their *own* lack of knowledge. But the prior owners' knowledge is imputed to Appellants for purposes of the statute of limitations. (*Hunter, supra,* 230 Cal.App.3d at p. 1537; *Bradler v. Craig* (1969) 274 Cal.App.2d 466, 472.)[9] Assuming that the Sewer Pipe in fact was installed outside the scope of the Easement, Appellants had the burden to provide evidence showing that the prior owners of the land did not know, and did not have reason to know, that fact. Appellants failed to do so, and the trial court therefore properly found that Appellants' trespass claim was barred by the statute of limitations.

---

[9] Gulf provided testimony describing the amount and nature of the work that would have been involved in installing the Sewer Pipe, supporting the inference that the location of the sewage line would have been visible to the former owners.

## DISPOSITION

The judgment is affirmed.  Gulf is entitled to its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.